[Crim. No. 1717.  Second Appellate District, Division One.—November 7, 1928.]

THE   PEOPLE,   Respondent,   v.   SYLVIA   BAKER, Appellant.

Edgar B. Hervey for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HOUSER, J.—By an information defendants Sylvia Baker, Frank Kirk, W. O. Schaeffer, and Charles M. Baker (the latter of whom was the husband of defendant Sylvia Baker), were charged with the commission of the crime of robbery. Each of the defendants Kirk and Charles M. Baker pleaded guilty to the charge. On the trial of the action Schaeffer was convicted of robbery in the first degree, and Sylvia Baker of robbery in the second degree. From the judgment and order denying her motion for a new trial defendant Sylvia Baker appeals.

It is urged by appellant that the evidence was insufficient to support the verdict. The crime committed was that of robbing employees of a street railway company in charge of a street-car barn in the city of San Diego. Approximately $4,000 was taken in the robbery, of which amount $3,000 was in currency and the balance of $1,000 in silver, weighing approximately 25 pounds; checks and 1,466 car tokens, all contained in a tin box, were also taken. Although as to several of the circumstances the evidence was contradictory, nevertheless it is clear that the jury was justified in believing the following facts to have been established: A short time preceding the date of the robbery, defendant Charles M. Baker and appellant reserved and procured for the use of defendants Kirk and Schaeffer a room in a certain hotel in the city of San Diego adjoining a room occupied by defendants Baker therein; following which time, and until after the robbery occurred, all of the defendants daily associated one with the other. In the early evening, as well as toward midnight, preceding the morning of the robbery, the clerk of the hotel saw appellant, her husband and Schaeffer go into and out of the hotel several times. Shortly after midnight the Bakers received a telephone call, and immediately thereafter, accompanied by Schaeffer, left the hotel, at which time they told the clerk they were going out to dinner. Each of defendants Charles M. Baker, Kirk, and Schaeffer was actually present at and participated in the robbery, which occurred at about 2:30 o'clock A. M., at which time an automobile was seen in front of the street-

car barn, but which automobile left that vicinity immediately thereafter. At about 3 o'clock A. M. appellant was seen walking back and forth in front of the hotel. Shortly thereafter she went to her room, remained there about five minutes, returned to the office of the clerk of the hotel, where she appeared to be anxious regarding her husband, left the hotel, but returned immediately, accompanied by her husband, who carried a package under his arm, wrapped in an overcoat, which package, in the presence of appellant, defendant Charles M. Baker took pains to tell the clerk was a case of whisky. Very soon thereafter appellant again returned to the office of the clerk of the hotel and told him that she was going to the depot to meet a friend. She was gone half an hour, returned alone and retired to the room occupied by her and her husband. Immediately thereafter defendant Charles M. Baker left the hotel and within five minutes returned thereto accompanied by defendant Schaeffer. At about 6 o'clock in the morning following, all the defendants checked out of the hotel. Two or three days later the tin box containing checks and car tokens which had been stolen in the robbery was found on the roof of the hotel where the defendants had roomed. The box corresponded in size with the package carried by defendant Charles M. Baker into the hotel shortly after the robbery occurred. Following the robbery Mrs. Baker bought a trunk which she said she gave to defendant Kirk. Kirk packed the trunk during Mrs. Baker's absence from her apartment. However, in order to account for its weight, Mrs. Baker made a statement to the effect that it contained linen and silver. The next morning after the robbery occurred Charles M. Baker left the city of San Diego for Los Angeles, where appellant and Kirk followed within a day or two thereafter. In Los Angeles the Bakers registered at a hotel under assumed names. After her arrest appellant made contradictory, improbable, and untrue statements concerning her acquaintance with defendants Kirk and Schaeffer; also with reference to her whereabouts and movements on the night preceding, as well as the morning of, the robbery.

Although perhaps it was not conclusively shown that appellant was actually present at the time when and at the place where the robbery occurred, after an examina-

tion of the transcript of the evidence, this court is convinced that it was ample to justify the conclusion by the jury that defendant either aided and abetted in the commission of the crime, or, not having been present where the crime was committed, advised and encouraged its commission—which is sufficient to meet the requirements of the statute. (Secs. 31 and 971 Pen. Code.)

▮ Appellant also predicates prejudicial error on certain remarks made by the judge of the trial court to the jury. The particular circumstances appear to have been that after the jury had been considering its verdict for some hours, at the direction of the trial judge the jury was called into the courtroom. In answer to an appropriate question the foreman of the jury informed the judge that the jury stood eleven to one—without indicating whether for acquittal or for conviction of defendant. Thereupon the judge remarked: "Well, I think the possibilities are that if you had a little more time out there that you might be able to persuade that one to see the situation." Later, when the jury was again brought into the courtroom, at which time it was disclosed that the same situation obtained, the judge made the statement that "evidently you haven't made any progress"; after which one of the jurors said, "Well, I don't believe, Judge, there is any use going back"; to which the judge responded: "You try it."

Appellant urges that each of such remarks made by the judge of the trial court "had the effect of throwing a weight into the balance in favor of the majority and against the minority." However, it is uncertain which faction of the jury finally prevailed. For aught that appears the one juror may have succeeded in converting the other eleven jurors to his opinion of the guilt of defendant. But, aside from such consideration, this court is of the opinion that the remarks made by the trial judge present no real ground for complaint. The effect of the entire situation was that, far from any coercion, the judge was merely suggesting that the jurors give further consideration to the evidence, etc., to the end that a verdict be reached.

In the case of *People* v. *Carder*, 31 Cal. App. 355, 357 [160 Pac. 686, 687], where a similar question was in-

volved, in part the court said: " . . . It was proper for the presiding judge to admonish the jury of their duty to consult together, to listen to argument, and to endeavor earnestly to reach an agreement. . . . "

In the case of *People* v. *Miles*, 143 Cal. 636 [77 Pac. 666], it appears that the trial judge had strongly urged the jury to agree on a verdict. Attention is directed to some general authorities and the conclusion reached that no error was committed by the trial court. Among other things, the opinion contains the following: "The point is, that it was proper for the court to urge the importance of reaching a verdict, and as it intimated no opinion of its own or suggested how the verdict should go, the defendants were not prejudiced." (See, also, *People* v. *Rhodes,* 17 Cal. App. 789 [121 Pac. 935]; *People* v. *Cherry,* 30 Cal. App. 285 [158 Pac. 335]; *People* v. *Bruno,* 49 Cal. App. 372, 379 [193 Pac. 511]; *People* v. *Quon Foo,* 57 Cal. App. 237, 241 [206 Pac. 1028].)

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 6, 1928.