[Crim. No. 225.   Fourth Appellate District.—December 16, 1931.]

THE PEOPLE, Respondent, v. HAROLD PARKER et al.,
Appellants.

M. H. Broyles for Appellants.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

FREEMAN, J., *pro tem.*—Defendants were charged by an amended information with the crime of burglary, and

defendant Parker was charged with a prior conviction of petty theft which he admitted upon his arraignment. The case was tried before a jury which found both defendants guilty of burglary in the second degree on August 25, 1931. Sentences were pronounced upon them on August 28, 1931, and they moved for new trials, which motions were denied. They then asked for probation and a hearing was set for September 11, 1931, when it was denied. Defendants have appealed from the judgments and from the orders denying their motions for new trial. On October 2, 1931, the court amended its judgment as to defendant Parker to recite that on his arraignment said defendant had admitted the previous conviction of petty theft.

As one of the grounds for appeal defendants maintain that the evidence was not sufficient to support the verdicts. In considering this question it is only necessary for us to determine if there is any evidence to support the verdicts. The amended information charges that on or about the twenty-third day of June, 1931, defendants did wilfully, unlawfully and feloniously and burglariously enter a certain building, to wit, a warehouse then and there occupied by the Southwestern Grocery Company, with the intent then and there to commit the crime of theft. The place of business of the Southwestern Grocery Company was located on Second Street between Market and I Streets in the city of San Diego.

The witness Gaines testified for the People that he was standing on the corner of Second and Market Streets between 2 and 3 o'clock on the morning of June 23, 1931; that he heard glass breaking, the noise coming from the direction of the Southwestern Grocery Company store south of Market Street; that he looked on Second Street and saw two men near the Southwestern Grocery Company store backing out of the way; that he saw either two men or two boys running south on Second Street, 3 or 4 minutes after he heard the noise of breaking glass; that he walked to the grocery-store and found one window broken; that he walked back and looked east toward Market Street and saw two men run on to a vacant lot and drop down; that he went to the Douglas Hotel on Market Street and called the police who arrived in about five minutes; that the police went down and brought back a man whom the witness could not

identify because when he was standing on Second and Market Streets he could not state who was at the grocery-store; that Parker asked the witness to tell the police that he (Parker) "was not one that was down there or something".

The witness E. D. Garnet testified for the People that on June 23, 1931, he was president of the Southwestern Grocery Company, a corporation; that their place of business was at 531–535 Second Street; that on June 23, 1931, at about 1:30 o'clock in the morning he was called to the store by the police; that he saw a window had been broken out on the outside of what was called the tobacco and cigar room; that the stock of cigarettes and tobacco were packed against the window; that on the next day two cases of Chesterfield cigarettes were returned to the Southwestern Grocery Company by the police; that the two cases contained about one hundred cartons of cigarettes; that the broken window pane was fourteen by twenty inches in size and the cases of cigarettes about ten by sixteen inches in size.

The witness Snyder testified that he worked at the Southwestern Grocery; that both defendants were at the Southwestern Grocery Company store on the afternoon before the burglary; that they asked the witness the price of cigarettes, saying they might put in a stock at the Douglas Cafe, but placed no order for the goods; that the witness left the place of business at 5 o'clock on June 22, 1931; that he closed and locked the place of business; that the windows were then all right; that when he left no window was broken; that the witness had charge of the stock of tobacco in the store and that after the burglary he checked the stock and found two cases of Chesterfield cigarettes missing.

The witness Lamadrid testified that he was special investigator for the Auto Club of Southern California at the city of San Diego; that on June 23, 1931, he saw two boys running east on Market Street and saw one of them carrying what he thought was a blanket go into the rear end of either a pool-hall or restaurant located on Market Street between Third and Fourth Streets; that when he saw this man go in at the rear, he ran around to the front; defendant Walter Good came out of the front door where the witness placed him under arrest; that as they were standing there

the witness questioned Good concerning the blanket which the witness thought Good had been carrying; that Good denied having it; that a Jap or Filipino came out and handed the witness a brown overcoat and a hammer, saying, in the hearing and presence of Good, that Good had dropped them inside the building; that the witness took Good to the police station, where he tried the overcoat on him and found that it fitted perfectly; that he had a conversation with Walter Good concerning the burglary; that all statements were made by Good freely and voluntarily and without the use of force or threats or without any promise of immunity or reward; that Good denied breaking the window in the Southwestern Grocery Company store; that finally Good admitted ownership of the overcoat and the hammer, explaining carrying the hammer by the fact that he had used it to assist him in repairing a punctured tire on his automobile; that Parker was then brought in and that after considerable conversation during which no force or threats were used nor offers of immunity or reward were made, Parker freely and voluntarily told Good to ''go ahead and tell them''; that Walter Good told the witness in the presence and hearing of Parker that he broke the window; that the witness then asked what had been done with the stolen cigarettes, to which Good replied that ''two packages were alongside of the billboard, back of the billboard alongside of or over in the vacant lot between Second and Third on Market''. The witness then went with one Ward to the location mentioned and they found the two cases of cigarettes. A police officer testified that on the night in question both of the defendants told him that they did not enter the building; that they ''just broke the window and pulled the cases of cigarettes out''.

The evidence to which we have referred is of itself sufficient to sustain the verdicts and judgments. The fact that the defendants as witnesses for themselves denied the greater part of the conversation related by the police officer and other witnesses merely raised a conflict in the evidence which was submitted to the jury which resolved the conflict against the defendants.

Defendants admitted they broke into the building and took the stolen cigarettes. The fact that these admissions were made to a police officer does not make them

incompetent. "It is established law that a confession is not rendered involuntary, or inadmissible in evidence merely because it was made to a police officer while the accused was under arrest, or because the defendant was not at the time in full possession of his faculties, or was under a state of great excitement or because he made it to free another from suspicion of guilt." (8 Cal. Jur., p. 111.)

It is contended by appellants that the *corpus delicti* should have been proven before a confession or an admission against the interest of the defendants could be received in evidence. "Proof of the *corpus delicti* should be made before the introduction of evidence of extrajudicial statements or admissions, and confessions. But in the absence of any showing of prejudice, irregularity in the order of proof is of no consequence, if the commission of the crime is ultimately established independently of the alleged admissions of the defendant." (8 Cal. Jur. 234.) In the instant case the crime was proven independent of the admissions of the defendants.

Defendants contend that the court erred in refusing to give the following instruction proposed by them. "The prosecution having rested its case upon circumstantial evidence, you are instructed that, before you would be justified in returning a verdict of 'guilty' you must first find that each circumstance offered as evidence is consistent with every other circumstance offered as evidence, and that the unbroken, consistent chain of circumstances leads to no other rational conclusion than that of guilt; and, if you have a reasonable doubt as to the consistency of the circumstances offered as evidence, and a resultant reasonable doubt as to whether the chain of circumstances leads to certain guilt, it is your duty to give the defendants the benefit of the doubt, and acquit them."

The instruction assumes that the People rested their case on circumstantial evidence alone, which assumption is not supported by the record. The statement in the instruction that the jury must first find that each circumstance offered as evidence is consistent with every other circumstance offered in evidence in an unbroken chain tending to sustain the guilt of defendants, or the jury must find defendants not guilty is not a correct statement of the law. All that is necessary in cases depending upon circumstantial

evidence is that the chain of circumstances convince the jurors beyond a reasonable doubt of the guilt of the accused. Other instructions given by the court correctly stated the law applicable to both direct and circumstantial evidence and confessions and admissions against interest.

Appellants contend that the trial court committed error in answering a question of one of the jurors who desired a definition of burglary, to which the court replied: "There is no evidence which justifies a verdict of first degree burglary in this case." This was a correct statement of the law when applied to the evidence in this case. Under the evidence it could not have been prejudicial to either of the defendants, as by it the jurors were told that the defendants could not be convicted of burglary in the first degree. The other instructions given fully and correctly defined burglary, and burglary in the first and second degrees. The defendants are not in a position to complain of the statement made by the court in reply to the question by the juror as they were found guilty of burglary in the second degree. The defendants also contend that the court erred in receiving the verdict of guilty after the jury had inquired of it "as to whether they could return a verdict of theft". The court gave the jury the correct definition of theft and made no other comment or reply to this question. There was no error as to this contention.

The defendants complain because after the jury returned a verdict in which it recommended leniency for the defendants, the court pronounced judgment sentencing defendants to the penitentiary. The recommendation for leniency was surplusage and there was no error committed by the court in pronouncing its judgment. (*People* v. *Lopez*, 210 Cal. 55 [290 Pac. 582].)

Defendant Parker contends that the court erred in its order of September 11, 1931, in correcting the judgment to show his former conviction. It was for the court to complete the record upon this question. This omission in the original judgment was an error which the court might correct, and make the record speak the truth. Such an omission did not affect the substantial rights of Parker. (*People* v. *Kelly*, 120 Cal. 271 [52 Pac. 587].) Such an order amending the judgment is an appealable one

(subd. 3, sec. 1237, Pen. Code). No appeal having been taken from it, it became final as to the defendant Parker.

■ The defendants had a fair trial. The evidence was submitted to the jury under proper instructions and no prejudicial error occurred in the court below of sufficient importance to warrant the granting of a new trial.

It is ordered that the judgments and orders denying defendants' motions for new trials be and the same are hereby affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1931, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 14, 1932.