LANGDON, J.
 

 A hearing was granted in this case after decision by the District Court of Appeal, Second District, Division One, in order to consider more fully defendants ’ contention that the court erred in refusing to consider affidavits of jurors filed in support of a motion for new trial. Upon such consideration, we believe that the said court reached the correct conclusion, and we hereby adopt the following opinion of Mr. Presiding Justice Houser as part of the opinion of this court:
 

 “Each of the defendants appeals, not only from a judgment of his conviction on each of six counts of the commission by him of the crime of rape, but as well, both from an order by which his motion for a new trial was denied, and from an order by which his application for probation also was denied.
 

 " Before a determination properly may be had on the merits of the appeal, a ruling by this court should be made on a motion herein presented to the effect that certain affidavits which were made by jurors who had acted as such on the trial of the action be included in the clerk’s transcript on the appeal from the judgment. It appears that each of such affidavits was presented to the trial court on the hearing of defendants’ motion for new trial and that some of them contained a statement in attempted explanation of why the verdict, as returned, was so returned; or, in the absence of such particularity, a declaration that if certain so-called ‘newly discovered evidence’ had been introduced on the trial, ‘ then he would have cast his ballot for acquittal of the defendants’. All other of such affidavits were of like import,— a number of which being to the effect that some of the jurors had talked with the bailiff, in whose charge they were, regarding the possible effect of a recommendation of mercy for the defendants which might be made by the jury, or as to whether, if the jury did not soon agree on a verdict, the probabilities were that the jury ‘would be locked up over the
 
 *141
 
 week-end’. It further appears that on the hearing of the motion for a new trial the trial judge sustained an objection that was made by the deputy district attorney who was in charge of the trial to the introduction in evidence of such affidavits, and ordered them to be stricken from the files of the action.
 

 “ From ‘time immemorial’ it has been the general rule that affidavits of jurors by which they may seek to impeach their own verdict are inadmissible. The facts which herein-before have been indicated do not present a situation which would require that an exception to the general rule should be noted. No error was committed by the trial judge, either in refusing to admit in evidence the affidavits in question, or in making the order to which reference has been had. Since they are not now, nor ever were, properly a part of the record in the trial court, no order of diminution of the record may properly be made by this court which would have the effect of incorporating those affidavits within the record on appeal herein for the purpose of giving them any weight or right to be considered in a determination of whether the trial court committed error in denying either the motion for a new trial, the application of defendants for probation, or for any other purpose involved in the instant appeal.
 

 “Regarding the appeal herein from the order by which the motion for a new trial was denied, the only point here urged has reference to the impelling force of the ‘newly discovered evidence ’ upon which the defendants relied in support of their motion. In that connection, two affidavits only were presented by the defendants to the trial court. In each of such affidavits the affiant deposed to the effect that shortly preceding the time when, according to the evidence, the prosecuting witness encountered the defendants, she was ‘in a crying, hysterical, drunken condition ’; that the reason why one of the affiants had not testified on the trial of the action was that ‘she was only thirteen years old; her mother and father did not wish her to become involved in such a case; that her information was not told to any attorney in this ease until the present affidavit was taken’. The other affidavit contained the statement that ‘the reason your affiant has not told this information prior, was because her brother . . . told her he would “punch her in the mouth” and would give her no more food if she said anything about this affair. Furthermore, he
 
 *142
 
 forcibly threw her on the bed when she started to say what she knew. However, your affiant is now willing to testify as to such things as she has knowledge. ’
 

 “The main facts set forth in those affidavits were flatly contradicted by statements contained in counteraffidavits. There was no attempt on the part of defendants to show that either they, or any of them, or their attorney, or any other person, had exercised due or any other diligence to secure the attendance at the trial of the action of either of the affiants whose affidavits were taken. Nor was any attempt made to show the materiality of the assumed fact that shortly before she met the defendants the complaining witness was in a drunken and hysterical condition, or how, if at all, that fact could have had any possible effect on the verdict that was returned by the jury. But by statements that were contained in a counter affidavit, it appeared that affiant therein was the brother of the older of such proposed witnesses ‘and that he has had opportunity to observe her mental condition throughout their entire life, and in his opinion, she is not mentally competent to make an affidavit; that she can neither read nor write, nor can she speak coherently, and this condition has existed throughout her life, to-wit, about thirty-one years’.
 

 “With reference to the specification of error which hereinbefore has been mentioned, no references of any sort are given, nor any citation of authority, except ‘Carl Sandburg’s Life of Lincoln’ at page 467. In view of well-established appellate court procedure, this court is under no obligation to search the record in an effort to ascertain a sound legal reason either for reversal of the judgment, or the order in question.
 
 (People
 
 v.
 
 Sanchez,
 
 57 Cal. App. 133 [206 Pac. 760];
 
 People
 
 v.
 
 Buck,
 
 72 Cal. App. 322 [237 Pac. 63].) Furthermore, a point suggested on appeal cannot be considered where the brief fails (as it does herein) to point out the page of the record where the alleged error is supposed to have occurred.
 
 (People
 
 v.
 
 Balmain,
 
 16 Cal. App. 28 [116 Pac. 303];
 
 People
 
 v.
 
 Myrick,
 
 112 Cal. App. 117 [296 Pac. 320].) In the absence of citation of authority, claim of, alleged error will not be considered.
 
 (People
 
 v.
 
 Jenkins,
 
 118 Cal. App. 115 [4 Pac. (2d) 799];
 
 People
 
 v.
 
 Titus,
 
 85 Cal. App. 413 [259 Pac. 465];
 
 People
 
 v.
 
 Williams,
 
 96 Cal. App. 215 [273 Pac. 1087].) A lack of authorities, references and citations applies generally throughout appellants’ brief; but especially
 
 *143
 
 with reference to the asserted error that the trial court committed in admitting certain testimony, it is noted that no reason is suggested why said testimony was inadmissible, or how it could have prejudiced the appellants’ case in any way. In that regard, see People v.
 
 Cebulla,
 
 137 Cal. 314 [70 Pac. 181];
 
 People
 
 v.
 
 Hadley,
 
 175 Cal. 118 [165 Pac. 442];
 
 People
 
 v.
 
 Peterson,
 
 120 Cal. App. 197 [7 Pac. (2d) 366],
 

 ‘ ‘ Considering all such circumstances, together with the law which is applicable thereto, it is apparent that the discretion that was vested in the trial court in the matter of its determination whether a new trial should be granted was not abused.
 
 (People
 
 v.
 
 Davis,
 
 135 Cal. 162 [67 Pac. 59].)
 

 “ But with respect to the appeal generally, it is first argued by appellants that the evidence which was adduced on the trial of the action was insufficient to sustain the judgment. With respect thereto, it ought to be apparent that no good to any person would result from a detailed statement herein of the facts upon which the verdict of the jury depended. It is enough to state that, notwithstanding possible false statements in several unessential details that were made by the prosecuting witness regarding the commission of the offenses by each of the defendants, as far as it may relate to the actual consummation of the several crimes of which the defendants were accused, together with the resistance and the failure of consent by the prosecuting witness to the said commission thereof, the evidence is positive and replete in affirmation of the several allegations that are contained in the information. And although no corroboration of such testimony was necessary to support a judgment of conviction of defendants, nevertheless, with reference to facts and circumstances which related to the physical, as well as to the mental, condition of the prosecuting witness which were present immediately following the attack which she declared had been made upon her, the prosecuting witness was amply corroborated by other witnesses. Not only that, but in many respects, including the fact of sexual intercourse that the prosecuting witness testified had occurred between her and each of the defendants, the testimony of the defendants themselves was corroborative. Standing alone, and in the absence of the supporting testimony which was presented herein, the story that was told by the prosecuting witness regarding the episode in question approaches so nearly
 
 *144
 
 the condition or situation of being inherently improbable that to implicitly believe in the truth thereof would be to tax one’s credulity to the utmost; but in the circumstances to which reference has been had with respect to the corroboration of such story, for this court judicially to declare that it is and was utterly unworthy of belief would amount to an assumption that could not be legally supported. It results that the point presented by appellants in this respect cannot be sustained.
 

 "Appellants’ contention, for which no authority is cited, that by reason of the death of the sister of the prosecuting witness the action of the trial judge in granting a continuance of two days after the jury had been sworn to try the cause, and in stating to the jury that ‘a situation has occurred . . . which will compel ... a continuance’, constituted error, is without merit. Not only through counsel, but personally, in open court, each of the defendants expressly consented to the postponement. With reference to the asserted misconduct of the deputy district attorney in eliciting testimony from the prosecuting witness to the effect that her sister had died on the day when the trial was commenced, and that her mother was seriously ill,—beyond citing the occurrence as an instance of how the defendants ‘were doomed to have all the breaks against them’, no attempt is made to justify from the record the conclusion that sympathy for the misfortunes of the prosecuting witness excited any prejudice whatever in the minds of the jurors against the defendants.
 

 "The court permitted to be read into evidence, over objection of the defendants, a stenographic report of an interview that had occurred between the prosecuting witness and a police officer in the presence of defendant Omar Gidney, who, at the time the statement was taken, was invited to and did interpose corrections and contradictions of the prosecuting witness’ story in some particulars, but conceded that ‘most of it, I guess’, was ‘about what happened’. Appellants claim that the admission of this report was prejudicial error as to the defendants who were not present when it was taken, but cite no authority in support of their assertion. The report was offered and received as evidence against Omar Gidney alone; and the jury was admonished, both during the course of the trial and in the instructions, to consider it as applying to said defendant only. In such circumstances, there is no legal cause for complaint.
 

 
 *145
 
 “It is asserted, without reference to any authority, that the action of the trial court in directing the attention of the jury (which had returned to the courtroom for a reading of some of the testimony) to an instruction theretofore given which included the statement that it is advisable, both for the interests of the state and the benefit of the defendants, that a verdict shouldbe returned’, had the effect of ‘forcing’ the verdicts. No reference is made to any matter in the record from which it could be inferred that the jury thereby was influenced in rendering its several verdicts. In similar situations, it frequently has been held that no error was committed.
 
 {People
 
 v.
 
 Miles,
 
 143 Cal. 636 [77 Pac. 666];
 
 People
 
 v.
 
 Achal,
 
 125 Cal. App. 652 [14 Pac. (2d)
 
 773]; People
 
 v.
 
 Baker,
 
 94 Cal. App. 687 [271 Pac. 777].)
 

 “ Bach of the verdicts contained a recommendation of leniency to the defendants and a suggestion that the court should consider an application for probation on their behalf. Complaint is made of the failure of the court to instruct the jury to retire again and bring in verdicts without any recommendations being thereto attached. No authority is cited in support of the proposition that the court, instead of requiring the jury to amend its verdict, may not accept the original verdict with its several recommendations, and thereafter disregard any unauthorized recommendations therein contained. To the contrary, in such circumstances it has been held that recommendations by the jury constitute no part of the verdict, but are mere surplusage, only.
 
 {People
 
 v.
 
 Collins,
 
 195 Cal. 325 [233 Pac. 97];
 
 People
 
 v.
 
 Sykes,
 
 10 Cal. App. 67 [101 Pac. 20];
 
 People
 
 v.
 
 Lamb,
 
 67 Cal. App. 263 [227 Pac. 969];
 
 People
 
 v.
 
 Parker,
 
 119 Cal. App. 246 [6 Pac. (2d) 82];
 
 People
 
 v.
 
 Lopez,
 
 210 Cal. 55 [290 Pac. 582].) Moreover, appellants’ claim of prejudice in this respect necessarily is founded upon the same attempted impeachment of the verdicts that is sought by their motion for diminution of the record, hereinbefore discussed, and hence cannot be considered.
 

 “ The record herein contains nothing that would form a basis for the claim that the trial court abused its discretion in denying the application made by defendants for probation.
 
 {People
 
 v.
 
 Jones,
 
 87 Cal. App. 482 [262 Pac. 361].) ”
 

 In the petition for hearing before this court, defendants contend that the circumstances of this case justify ■ an exception to the general rule that jurors may not impeach
 
 *146
 
 their own verdict. The affidavits disclose gross and inexcusable misconduct by the bailiff, a court officer, who had the effrontery to discuss the case with certain jurors and advise them both on the legal effect of their verdict and the probable decision of the judge with respect to sentence in the event that a certain kind of verdict was given. Another affidavit charges the bailiff with informing the juror that one of the defendants had a bad reputation with the police. That these activities would justify a new trial cannot be doubted, and it may be conceded that such misconduct, properly established, would constitute reversible error.
 

 There remains the question whether it was properly established, and in this case the only evidence to show the misconduct was that of the jurors themselves. Their affidavits constitute an impeachment of their verdict, and under the provisions of section 657 of the Code of Civil Procedure, cannot be admitted in evidence. Counsel for defendants urges that a distinction should be made between the situation where jurors affirm improprieties in their own deliberations and where, as here, they disclose outside influences, unauthorized communications by a court officer. Some jurisdictions make this distinction, while others apply the general rule literally. (See 5 Wigmore, Evidence, 2d ed., sec. 2354, pp. 135, 136;
 
 Emmert
 
 v.
 
 State,
 
 127 Ohio St. 235 [187 N. E. 862, 90 A. L. R 242]; 44 Yale L. J. 516.) In California the rule is statutory, and it has been held that the statutory exception of chance verdicts is exclusive. Accordingly, affidavits of jurors showing misconduct out of court or evidence received by them from outside sources have been refused admission.
 
 (People
 
 v.
 
 Reid,
 
 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435];
 
 People
 
 v.
 
 Wong Loung,
 
 159 Cal. 520 [114 Pac. 829]; see 23 Cal. L. Rev. 218.) The ease of
 
 People
 
 v.
 
 Reid, supra,
 
 is particularly in point, for the misconduct charged therein was a prejudicial statement by the bailiff to the jurors. Only where the misconduct of a juror occurred before empanelment of the jury, or constituted false swearing on his
 
 voir dire
 
 examination, has the statutory prohibition been deemed inapplicable. (See
 
 Williams
 
 v.
 
 Bridges,
 
 140 Cal. App. 537 [36 Pac. (2d) 407]; 23 Cal. L. Rev. 359.)
 

 The rule has been criticized by eminent authority (see 5 Wigmore, Evidence, sec. 2352-2354, and Supplement), but
 
 *147
 
 the evil, if any, is established in this state by the legislative authority, and can only be cured by amendment.
 

 The judgments, and the orders denying motions for new trial and applications for probation, are affirmed.
 

 Curtis, J., Waste, C. J., Seawell, J., and Edmonds, J., concurred.
 

 Rehearing denied.