Filed 7/9/21  Dresser v. Hiramanek CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Santa Clara)

----

| | |
|---|---|
| WILLIAM C. DRESSER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ADIL HIRAMANEK, as Personal Representative, etc.,<br><br>Defendant and Appellant. | C082948<br><br>(Super. Ct. No. 1-13-CV-239828) |

Roda Hiramanek sued William C. Dresser, an attorney, in Santa Clara County Superior Court, asserting causes of action arising from William's representation of Roda in another matter.[1]  The trial court eventually imposed terminating sanctions against

---

[1]  We refer to individuals by their first names for clarity.

1

Roda on her complaint and on William's cross-complaint because Roda failed to appear for deposition. The trial court entered judgment awarding William $177,838.66 in compensatory damages. Roda's appeal of the judgment was transferred to this court.

Representing herself, Roda (1) asserts various contentions and accusations throughout her opening brief. She also contends (2) the trial court erred in granting William's motion for terminating sanctions, (3) the trial court and William violated laws protecting individuals with disabilities, (4) the trial court struck the wrong complaint after granting the motion for terminating sanctions, (5) the trial court improperly construed her motion for relief from default as a motion for reconsideration of the order striking her complaint and answer to the cross-complaint, (6) the trial court erred by awarding damages after a prove-up hearing, (7) the trial court erred by denying her motion to consolidate this action with an action filed by William against her son Adil, (8) the trial court erred by quashing her subpoena to the California Bar Association for records relating to William, (9) delays in the litigation violated Roda's due process rights, and (10) this action should be transferred to an unbiased judiciary.

We conclude (1) Roda's repetitive unsupported contentions and accusations fail for the reasons we explain, (2) the trial court did not abuse its discretion in granting terminating sanctions, (3) the trial court and William did not violate laws protecting individuals with disabilities, (4) the trial court properly struck the operative complaint, (5) the trial court properly denied Roda's motion for relief from default, appropriately observing that the motion was, in essence, a motion to reconsider the order granting terminating sanctions, (6) the trial court properly awarded damages after the prove-up hearing, (7) Roda fails to establish prejudice resulting from the trial court's denial of the motion to consolidate, (8) she fails to establish prejudice resulting from the trial court's quashing of the subpoena, (9) she fails to establish prejudice resulting from the delays in litigation, and (10) the record does not evidence bias.

We will affirm the judgment.

2

BACKGROUND

On January 22, 2013, Roda filed a complaint against William, an attorney, stating 15 causes of action arising from William's representation of Roda in a prior matter. William demurred to the complaint.

In May of that year, William filed a motion to compel Roda to respond to discovery requests that included requests for admissions, form interrogatories, requests to produce evidence, and a notice of deposition. William stated in a declaration that Roda had not responded to the propounded discovery. William also asked the trial court to deem admitted the unanswered requests for admission. That same month, the trial court denied a motion to consolidate this action with action No. 1-11-CV-212974 (the 2011 action), an action between William and Roda's son Adil.

Roda filed a motion the following month to compel William to respond to discovery, alleging William did not respond to form interrogatories. Around the same time, the trial court sustained William's demurrer on three causes of action and overruled the demurrer as to the remaining causes of action. Roda filed a first-amended complaint.

In July 2013, William filed an answer to Roda's complaint and also filed a cross-complaint against Roda. The trial court granted in part and denied in part each of the parties' motions to compel discovery. The trial court also granted William's motion to compel Roda's deposition and ordered the parties to meet and confer within five days of the order.

The trial court heard another motion by Roda to compel discovery the following month. The trial court's minutes reflect the following: "As directed by the Tentative Order . . . , [Roda] was required to appear at the hearing on this motion. She chose not to appear in person as ordered. Instead, she appeared [telephonically]. A man who identified himself as Adil [fn. omitted], her son, spoke up. He said that she has been given accommodation not to be required to appear in Court. A review of the Requests for Accommodation reveals this statement to be false. [¶] During the course of the hearing,

3

Adil continued to speak on the merits of the motion. This Court instructed him not to speak any further." The trial court found Roda did not comply with her duty to meet and confer on the discovery issues and, therefore, denied her motion to compel discovery.

In October 2013, the trial court held a hearing on Roda's request for a protective order to preclude her deposition from being taken. The trial court said Roda's references to William as a stalker, an elder abuser, and a predator were not civil but declined to issue an order to show cause against her based on the comments. The trial court determined the request for a protective order had been previously denied and would not be reconsidered.

That same month, the trial court denied William's special motion to strike the first amended complaint. Roda filed an answer to the cross-complaint, and William filed an answer to Roda's first amended complaint.

On November 14, 2013, William filed a motion for terminating sanctions against Roda. In a declaration, William wrote: "[Roda] will not appear for deposition, and will not even respond to my numerous calls and letters to her to provide any available date for deposition." William said Adil told him Roda would not appear for deposition and would not speak to William but would communicate only by writing. According to William, after Roda failed to appear for a noticed deposition, Adil said Roda would not appear for deposition until the trial court and appellate courts had ruled on every possible motion to be filed in Roda's name. Days after William filed his motion for terminating sanctions, Roda filed her own motion for terminating sanctions, asserting that William had failed to obey prior court orders.

The following month, Roda appeared in person for the hearing on the motions for terminating sanctions. The hearing was conducted in English. There is no indication in the record that Roda had an interpreter. When the trial court gave Roda the opportunity to speak, Roda said her doctor did not permit her to leave her house at risk of her life.

4

She claimed that, if anything happened to her, it would be the responsibility of William and the trial court.

The trial court said it had received assertions that Roda was deathly ill and on life support and could not leave home, but the trial court had never received medical records supporting those assertions. The trial court said it had also received assertions that Roda did not speak English, but there were various indications she could in fact speak English.

Turning to discovery, the trial court said Roda had filed a lawsuit against William but refused to comply with the prior court orders pertaining to her deposition. When the trial court asked Roda why she had not submitted to a deposition, she said William canceled the last one. William disagreed, saying he gave her proper notice and waited for her at the scheduled place and time. Adil spoke up and said that although William had called and canceled the deposition, Roda was willing to be deposed if the trial court ordered it. The trial court said it had already given Roda various chances to comply with the court's orders. The trial court adopted its tentative ruling as its order and granted William's motion for terminating sanctions. Roda tried to say more but the trial court ended the hearing.

Thereafter, on December 17, 2013, the trial court issued a written order granting William's motion for terminating sanctions and striking Roda's complaint against William along with Roda's answer to William's cross-complaint. On December 24, 2013, the trial court entered Roda's default.

Two days later, Roda filed a notice asserting that this action was stayed because an appeal had been filed in the 2011 action. She said the appeal in the 2011 action deprived the trial court of jurisdiction to enter the default in this case. She claimed that, because the trial court had denied her motion to consolidate this action with the 2011 action, this action was stayed when the notice of appeal was filed in the 2011 action.

On January 9, 2014, Roda filed a notice of appeal in this case. On January 15, 2014, she filed a motion in the trial court for relief from default. On January 17, 2014,

5

the trial court (Judge Socrates Manoukian) overruled Roda's "Objection to Judge Socrates Peter Manoukian for Disqualification for Cause [etc.]." The trial court added that to the extent the objection was a peremptory challenge under Code of Civil Procedure section 170.6, it was denied as untimely. On January 24, 2014, the trial court filed an order stating there was no stay of this case resulting from the appeal in the 2011 action.

On February 11, 2014, Roda filed a petition for writ of supersedeas, mandate, and prohibition in the Court of Appeal, Sixth Appellate District, asking the appellate court to vacate the terminating sanctions. On February 20, 2014, the trial court denied Roda's request to set aside the default. The trial court also denied Roda's motion for automatic stay and motion to vacate orders lacking jurisdiction. On February 26, 2014, Roda filed a notice designating the record on appeal in this action.

On February 28, 2014, the trial court entered default judgment in favor of William and against Roda on both Roda's complaint and William's cross-complaint, awarding William $177,838.66 in compensatory damages. On March 3, 2014, Roda filed another notice of appeal. On March 10, 2014, Roda filed a motion for relief from what she characterized as a "proposed" default judgment.

Two months later, the Sixth Appellate District denied Roda's petitions for writs of supersedeas, mandate, and prohibition. That same month, the trial court denied Roda's motion for relief from the default judgment. On May 22, 2014, Roda filed another notice of appeal.

DISCUSSION

I

We begin our analysis by addressing various appellate contentions and accusations that Roda asserts throughout her opening brief.

At various points in the briefing, Roda claims orders or actions of the trial court were void for lack of jurisdiction because the trial court was disqualified. It appears

6

Roda made motions to disqualify the judge and the motions were not granted. That issue, however, was reviewable only by petition for writ of mandate unless the party challenging the order claims their due process rights were violated. (Code Civ. Proc., § 170.3, subd. (d); *People v. Brown* (1993) 6 Cal.4th 322, 334.) Because Roda does not assert any due process claims concerning the purported disqualification of a trial judge, her contentions that the trial court's orders or actions were void for lack of jurisdiction because the trial court was disqualified necessarily fail.

Roda also asserts contentions that the trial court's orders or actions were void for lack of jurisdiction because an appeal or petition for writ of mandate had been filed in the 2011 action. She seems to believe that an appeal in the 2011 action stayed proceedings in this case because the trial court denied Roda's motion to consolidate the 2011 action with this case. There is no authority for the proposition that an action is stayed because of an appeal in another action that was not consolidated with the current action. Roda's claims that the trial court's orders or actions were void for lack of jurisdiction because the action was stayed are without merit.

In addition, for most of Roda's contentions, she fails to articulate them in the type of heading required by the rules of court. Points raised in the opening brief must be set forth separately under an appropriate heading, showing the nature of the question to be presented and the point to be made. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.) "This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' (*Landa v. Steinberg* (1932) 126 Cal.App. 324, 325 . . . .)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) The heading is not merely an outline label, but must constitute a contention of legal error. Failure to set forth arguments under an

7

appropriate heading as required by the rules forfeits consideration of the issue on appeal. (*Opdyk,* at p; 1831, fn. 4.)

Roda also fails to provide authority for many of her contentions. To properly raise a cognizable argument on appeal, the appellant must cite to authority, whether statutory or precedential, that supports the argument. (*People v. Gidney* (1937) 10 Cal.2d 138, 142-143.)

The failure to provide appropriate headings and authority results in forfeiture of appellate review of the issues for which no appropriate heading or authority is provided. We will not search Roda's briefs to try and identify contentions that she did not place in the required heading, and we will not examine the law for unsupported issues. The appellant has the burden to provide the court with the required information. (*Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639; *Metzenbaum v. Metzenbaum* (1950) 96 Cal.App.2d 197, 199.)

In addition, Roda makes various comments about the trial judges and the opposing party. For example, Roda cites many allegations (both against William and against the trial court) that she made in her papers in the trial court. She asserts these allegations as facts on appeal, supported only by a citation to her allegation in the trial court. Generally, the trial court is the arbiter of facts; therefore, we do not treat as factual mere allegations by a party. (See *Tupman v. Haberkern* (1929) 208 Cal. 256, 269-270.)

We also will not accept as facts the unsupported accusations against the trial judges and opposing party that Roda makes in her opening brief. For example, Roda's opening brief, in section 5.1.2, alleges William falsified the record concerning a notice of deposition. Roda's lone citation to the record to support this allegation is to the first page of William's notice of deposition. There is no support on that page for an allegation that William falsified the record. In a footnote associated with section 5.1.2 of her brief, Roda refers us to section 5.1.8 of the opening brief. That section, however, relates to whether this action was automatically stayed by the appeal in the 2011 action. There is

8

no support for Roda's allegation that William falsified the record. We will disregard all unsupported allegations in the opening brief.

Similarly, Roda makes multiple unsupported assertions that a trial judge was biased against her based only on rulings against her and trial court observations about her litigation style. Roda suggests she was "blacklisted" by the trial court after she filed a federal action naming the trial judges. But there is no evidence to support the allegations. Again, we will not consider unsubstantiated accusations.

Finally, Roda makes multiple unsupported comments about judges and attorneys. For example, she writes that one of the trial judges is of Lebanese descent and is unpopular on the internet. Such comments are legally irrelevant, unsupported, and improper. (See *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 463 [improper to state matters outside the record on appeal].) We will ignore them.

II

Roda contends the trial court erred in granting William's motion for terminating sanctions. After summarizing the law concerning terminating sanctions, Roda provides 35 subheadings, most of which do not contain citations to authority or are based on Roda's unmeritorious assertions about the jurisdiction of the trial court and unsubstantiated accusations about the trial judges and William. As noted above, Roda fails to establish that the trial court did not have jurisdiction. And we will not consider assertions unsupported by relevant legal authority or give credence to Roda's allegations about the trial judges and William based on Roda's unsubstantiated accusations. Other subheadings are simply Roda's view of the procedure, unconnected to the terminating sanctions. We need not consider these matters of procedure because Roda does not explain why they are relevant to our review of the judgment. We therefore turn to whether the trial court abused its discretion in granting terminating sanctions and conclude there was no abuse of discretion.

9

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process,' " including terminating sanctions. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991, quoting Code Civ. Proc., § 2023.030.) Misuse of the discovery process includes "[f]ailing to respond or to submit to an authorized method of discovery" and "[d]isobeying a court order to provide discovery." (Code Civ. Proc., § 2023.010, subds. (d) & (g).)

" 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.' " (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36.) The trial court may order a terminating sanction for discovery abuse "after considering the totality of the circumstances: [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246.) Trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders. (*Id*. at pp. 1244-1246 [discussing cases].)

Roda argues that William's allegations that she refused to appear for a deposition or refused to communicate were unsubstantiated and unsupported. Roda points out that she opposed the allegations. But William filed a declaration in support of the motion for terminating sanctions stating that Roda did not appear for depositions, and the trial court gave credence to William's statements as the finder of fact, having considered the parties' competing versions of what happened. The trial court found that William properly noticed depositions and Roda failed to appear, even after being ordered by the trial court to submit to deposition. The trial court did not find Roda's version of events credible.

Roda further asserts that the final deposition notice was untimely because it was not delivered to her residence. However, the trial court determined that the deposition notice was sent to the address on record in the action.

10

In addition, Roda claims William's deposition notices were defective for various reasons. But her claims are based on her version of the facts, a version rejected by the trial court. In any event, she presents no authority that the asserted defects in the deposition notices rendered the terminating sanctions an abuse of discretion. Any defects that did not render the terminating sanctions an abuse of discretion are insufficient to obtain reversal because the defects were not prejudicial. We reverse only for prejudicial error. (Cal. Const., art. VI, § 13; *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 526-527.)

Roda adds that William scheduled a deposition for a holiday (Veterans Day, November 11, 2013). She acknowledges the trial court found there was no California authority that a deposition could not be scheduled for a holiday, and she recognizes that California law is silent on the matter. Nevertheless, she presents authority that some other jurisdictions disallow depositions on holidays and asserts this is an issue of first impression for us. Because she does not present a reasoned analysis showing why the rules of other jurisdictions should apply to California depositions, she has not shown an abuse of discretion.

Roda argues the trial court entered terminating sanctions against her without giving her the opportunity to be heard because the trial court did not allow her to make a telephonic appearance and the trial court ended the hearing even though she wanted to argue the matter further. She relies on *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199. In that case, the appellate court reversed because the trial court imposed terminating sanctions even though the party against whom sanctions were imposed was not given notice concerning sanctions and was not present. (*Id.* at pp. 202, 205, 209-210.) Unlike in that case, however, Roda was given notice and was present. Her argument lacks merit.

If Roda intended to assert any other issue with respect to terminating sanctions that we have not already addressed both in this part of the Discussion or in part I of the

11

Discussion, the issue was not raised in a manner that would require appellate review. For the most part, Roda's opening brief fails to clearly supply headings, provide authority, confine itself to facts as found by the trial court, or raise and effectively argue contentions.

### III

Roda also asserts she was open to being deposed as long as she was provided with reasonable accommodation under the Americans with Disabilities Act (ADA) and California laws protecting individuals with disabilities. She references an objection she made to a notice of deposition, which stated: "Non-remote deposition can only be had upon Roda's ADA/medical accommodation. Notice does not offer the necessary ADA accommodation."

According to an augmentation to the record filed under seal in this court on September 24, 2018, Roda filed in the trial court a request for reasonable accommodation in all pending and future court hearings in this action on January 22, 2013. The trial court agreed to provide an assistive listening device in the courtroom and wheelchair access to the courtroom and rest rooms.[2]

On June 24, 2013, Roda filed another request for reasonable accommodation in the trial court, requesting that she be deposed by telephone or other remote electronic means. The request was denied by the trial court because a deposition is not a proceeding that takes place in court. The trial court's ADA coordinator notified Roda that she could seek review of the decision by petition for a writ of mandate in the Court of Appeal, Sixth Appellate District. (See Cal. Rules of Court, rule 1.100(g)(2) [providing for review of ADA accommodation denial by petition for writ of mandate].)

---

[2] A request for accommodation filed in a different case in 2012 also appears in the augmented record, but that request is not relevant to this case.

There is nothing in the record indicating that a petition for writ of mandate was sought or granted on Roda's request for reasonable accommodation relating to her deposition. As a result, Roda cannot complain on appeal that her request for accommodation was improperly denied because she did not seek and obtain relief by petition for writ of mandate. (See *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 672 [a claim is not cognizable on appeal if a remedy is provided through petition for writ of mandate].)

Roda claims William did not offer her reasonable accommodation for the deposition. But she does not establish prejudicial error by providing sufficient argument with citations to authority and to the record.

IV

Roda next argues we must reverse because the trial court struck her complaint rather than her first amended complaint. She offers no authority to support her argument. In any event, the obvious import of the trial court's order was to strike the operative complaint, which was the first amended complaint.

V

Roda contends the trial court incorrectly treated her motion for relief from default as a motion for reconsideration of the order imposing terminating sanctions. But the record indicates the trial court correctly understood the true import of Roda's motion. The trial court explained that the motion to set aside default was really a motion for reconsideration of the order imposing terminating sanctions because the order imposing terminating sanctions resulted in the entry of default. Although Roda claims on appeal that she should have been allowed to argue that the default was entered due to mistake, the record shows the default was entered because she refused to appear for deposition in violation of court orders. Roda has not established cause for reversal.

13

## VI

In various arguments, Roda claims the trial court improperly awarded William $177,838.66 in damages after a prove-up hearing. None of the arguments have merit.

### A

Roda argues William did not provide her with a statement of damages under Code of Civil Procedure section 425.11.

"In the case of a defendant's default, '[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . .' or in a statement required by section 425.11. ([Code Civ. Proc.] § 580, subd. (a); see *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 ['It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend.'].) '[T]he primary purpose of . . . section [580] is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them.' (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826; see *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 398.)" (*Warren v. Warren* (2015) 240 Cal.App.4th 373, 377, disapproved on another ground as stated in *Sass v. Cohen* (2020) 10 Cal.4th 861, 887, fn. 12.)

Roda's argument lacks merit because the amount awarded was asserted in William's cross-complaint. He asserted a third cause of action for rescission, deceit and quantum meruit, alleging that Roda became indebted to him in the sum of $177,838.66. After the prove-up hearing, the trial court awarded William $177,838.66 for compensatory damages on the third cause of action. Because the trial court awarded the amount of damages sought in the cross-complaint, there was no need for William to provide Roda with a statement of damages under Code of Civil Procedure section 425.11.

### B

Roda next argues the award is barred because William sued Adil for the same conduct in a different action and, if William were to lose in the other action, it would be

14

res judicata in this action. Even if Roda is correct on this point, because she does not establish that judgment has been entered in the other action, her argument is purely hypothetical and without merit.

C

In addition, Roda argues the prove-up hearing should not have occurred while her motion for relief from default was pending. In support, she cites cases in which a trial court continued a prove-up hearing until a motion for relief from default could be heard. (See, e.g., *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1471-1472.) However, she cites no case that requires the trial court to continue a prove-up hearing until after a motion for relief from default is resolved. Accordingly, she provides no authority in support of her contention. Roda also does not establish that the challenged procedural posture resulted in prejudice to her. (Cal. Const., art. VI, § 13.)

D

Roda attempts to challenge the sufficiency of the evidence in the prove-up hearing to support the judgment entered against her. However, "the ' "sufficiency of the evidence cannot be reviewed on an appeal from a default judgment." [Citation.]' (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 320.) The default admits the allegations of the complaint. If extraneous evidence is introduced at the prove-up hearing, defendant lacks standing to complain." (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303.) Here, William's cross-complaint alleged that the reasonable value of his services was $177,838.66, and that Roda defrauded him in that amount by misrepresenting material facts relied upon by William to enter into retainer agreements and provide those services. Roda's attempt to challenge the evidence with facts outside the record is unsuccessful.

E

In another argument, Roda claims William's cross-complaint was barred by the statute of limitations. But she cannot raise that contention on appeal, having forfeited

15

such affirmative defenses through her conduct resulting in terminating sanctions and default. (See *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581.)

F

Roda further argues the evidence was insufficient to support the amount of the default judgment. "On appeal, defendant may challenge the sufficiency of the evidence offered to support the default judgment. 'Plaintiffs in a default judgment proceeding must prove they are entitled to the damages claimed.' [Citations.]" (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 288.) However, Roda's contention lacks merit because she fails to show how the evidence presented by William at the prove-up hearing was insufficient to sustain the award of $177,838.66 in compensatory damages. Instead, Roda merely alleges no evidence was presented. But the trial court's judgment reflects that on January 13, 2014 and January 27, 2014, the trial court was given documentary and testimonial evidence in support of the cross-complaint. In fact, William was sworn in as a witness on January 13, 2014, and he introduced to the trial court a binder of documents, including work William did on Roda's case and the retainer agreements between William and Roda. On January 27, 2014, the trial court said it had read William's evidence. Roda's representation that there was no evidence is untrue, and, in any event, it was her responsibility to procure an adequate record on appeal, including the evidence submitted to the trial court by William. (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1376.)

G

Roda asserts that some of William's responses in discovery preclude his recovery. But those responses were not before the trial court when it determined the amount of damages.

H

To the extent Roda attempted to raise any other arguments concerning the award of damages, she either failed to raise them adequately for review or they have been addressed in other parts of this opinion.

16

## VII

Roda contends the trial court erred in denying her motion to consolidate this action with the 2011 action filed by William against Adil. We reject this contention because Roda fails to establish any prejudice from the denial of the motion to consolidate. (Cal. Const., art. VI, § 13.)

## VIII

Roda also contends the trial court erred in quashing her subpoena to the California Bar Association for records relating to William. The contention fails because Roda does not establish any prejudice from the granting of the motion to quash. (Cal. Const., art. VI, § 13.)

## XIX

Roda claims that delays in the litigation violated her due process rights. She argues the delays prejudiced her because "justice delayed is justice denied . . . ." (*Laborers' Internat. Union of North America v. El Dorado Landscape Co.* (1989) 208 Cal.App.3d 993, 1007.) However, abstractly claiming that justice delayed is justice denied is not a substitute for establishing prejudice, and Roda has shown no prejudice here. (Cal. Const., art. VI, § 13.) In a footnote, Roda complains that she cannot now file a cross-complaint because the case is "in post-judgment status." The statement is true, but it is not a showing of undue prejudice. Her post-judgment status in this case is the legal consequence of her actions that precipitated terminating sanctions.

## X

Finally, Roda argues this case should be ordered removed to an independent and unbiased judiciary. She cites no authority to support the argument, and we have found no judicial bias in the record.

Again, to the extent Roda attempted to assert any other contention in her opening brief, she forfeited it for failure to provide a heading or to argue it adequately.

17

DISPOSITION

The judgment is affirmed.  William Dresser is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                          /S/
                                    MAURO, J.



We concur:



      /S/
RAYE, P. J.



      /S/
HOCH, J.


18