[Crim. No. 1942. First Appellate District, Division Two.—April 7, 1937.]

THE PEOPLE, Respondent, v. BRUCE VAN SKANDER, Appellant.

Alfred J. Hennessy for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

STURTEVANT, J.—The defendant was convicted of the crime of forgery. He made a motion for a new trial but the motion was denied. He also made a motion for probation but that motion was also denied. Later sentence was imposed and he appealed from the judgment and the order denying a new trial.

The charging part of the information is as follows: "The said Bruce Van Skander, on or about the 8th day of August, A. D. nineteen hundred and thirty-six, at the City and County of San Francisco, State of California, did then and there wilfully, unlawfully, feloniously, falsely, fraudulently and with intent to prejudice, damage and defraud Ellen G. Van Skander, and the San Francisco Bank, a banking corporation, make, alter, forge and counterfeit a certain instrument in writing for the payment of money in the words and figures, following, towit:

'The San Francisco Bank
 San Francisco, Calif., August 8th, 1936
Pay to the order of Cash.......................... $10.00
Ten and no/100...............................Dollars.
 KUROLA PRODUCTS COMPANY
 ELLEN G. VAN SKANDER, BRUCE H. VAN SKANDER.'
And he, the said Bruce Van Skander, then and there well knowing the same to be false and forged, did then and there, towit: on or about the 8th day of August, 1936, at the said City and County of San Francisco, wilfully, unlawfully, feloniously, falsely, fraudulently and with intent to prejudice, damage and defraud the said Ellen Van Skander and the said The San Francisco Bank, utter, publish and pass the same as true and genuine to said The San Francisco Bank;
. . . "

The uncontradicted evidence was to the effect that a few months prior to August 8, 1936, the defendant was engaged in purchasing mineral oil in Utah, transporting it to San Francisco, processing it, bottling it, and selling it for medicinal purposes. The business was conducted under the fictitious names of Kurola Products Company and Unita Sales Company. At that time the defendant was the sole proprietor of both companies. He married Ellen G. Van Skander. On or about his wedding day the defendant commenced borrowing sums of money from his wife. At the

time of the trial she testified that she held notes aggregating $7,300. On a date prior to the month of June, 1936, the defendant took his wife into the business and made her an equal partner. Neither advanced nor agreed to advance any definite sums as capital of the partnership. However, at about the same time, as we understand the record, the defendant and his wife opened two bank accounts with the Fillmore branch of The San Francisco Bank. One account was opened in the name of Kurola Products Company and one in the name of Unita Sales Company. As a part of the transaction the defendant and his wife signed a contract including a covenant as follows: ''The undersigned hereby declare that the undersigned are doing business under said firm name and that the undersigned are copartners and the sole owners of the said business, which is not incorporated, and hereby authorize any two of the following persons, namely Bruce H. Van Skander, general manager, and Ellen G. Van Skander, treasurer, in said firm name, and on its behalf, to sign checks or orders for the withdrawal of any funds which may be, at any time, on deposit in said account.'' Both signed said contract. In the account so opened in the name of Kurola Products Company Mrs. Van Skander deposited of her own moneys $4,300. In the other account she deposited of her own moneys $500. The said contracts of deposit were never modified but remained in full force and effect. There was testimony to the effect that in the month of June, 1936, the defendant was planning a sales trip up and down the state and he and his wife executed a contract purporting to vary the terms of the said deposit contract, however, the testimony was distinctly conflicting regarding the June contract and no document evidencing it was produced and offered in evidence. The evidence showed without conflict that the check set forth in the information was drawn on August 8, 1936, that the defendant signed the name Kurola Products Company, that he signed his own name, and that he also signed the name of Ellen G. Van Skander. It also showed that afterwards he negotiated the check, and that the check was cashed by The San Francisco Bank. The defendant testified the moneys were received and used in the business of the Kurola Products Company but he produced no vouchers in support of his testimony.

■ The defendant contends that the verdict is contrary to law. That contention rests on the assertion that no public offense was committed as the money on deposit in the Fillmore branch of The San Francisco Bank was the money of the defendant, and in withdrawing it he could be guilty of a breach of contract but not of a public offense. That argument is not sustained by the facts. At no time, prior to the deposit, did the defendant personally have any title to the money. It was formerly the money of Mrs. Van Skander. She deposited the money in the bank in the account of Kurola Products Company. The deposit having been made the money became the property of the bank. (*State* v. *Security Sav. Bank,* 186 Cal. 419, 423 [199 Pac. 791].) The defendant's rights to draw checks on the account were those expressed in the deposit agreement and not otherwise.

■ In another portion of his brief the defendant relies on the same facts and contends that as the defendant and his wife were partners the offense of forgery could not be committed by the defendant against the partnership. He cites and relies on *Commonwealth* v. *Brown,* 10 Phila. (Pa.) 184. That case is not directly in point. It did not show that there was an outstanding contract limiting the rights of the partners to enter into certain contracts. Whereas in the instant case there was a clear-cut contract. The distinction is material. In the absence of a showing to the contrary it will be conceded that a partner can enter into contracts in behalf of the partnership and sign the partnership name. When, as here, there are between the partners articles of copartnership and other special contracts limiting their powers, the rule in the Brown case has no application. The plaintiff relies on *State* v. *Sotak,* 100 W. Va. 652 [131 S. E. 706, 46 A. L. R. 1523]. It is more nearly in point; but, it is not as strong in its facts as the instant case. The contractual limitations on the rights of the partners in this case were set forth in the written deposit contract. In the Sotak case such limitations rested in the recollection of the witnesses. In other respects the Sotak case is quite similar in its facts. In that case the Supreme Court of West Virginia cited and reviewed nearly every case in England and America on the contention which this defendant makes. Having done so it ruled the point in favor of the state. The substance of the ruling is set forth in the headnote: "But if a fund be deposited in the joint name of the

two persons who are partners, *under the express understanding and agreement that the fund shall only be used for an agreed purpose, and shall not be withdrawn from the bank's custody except upon the signature of the two, signed personally by themselves,* the implied authority (which one has by reason of the relation of partner to the other to withdraw said fund) does not exist; and, if one signs his own and the other's name to a check by which the fund is withdrawn, to the prejudice of the other, and with criminal intent, he is guilty of forgery." (Italics ours.) In *People* v. *Errig,* 240 App. Div. 300 [270 N. Y. Supp. 372], the question was again examined with much care and the same conclusion was reached. We are content to rest our ruling in the instant case on the authority of those decisions. In reaching its conclusion the Supreme Court of West Virginia pointed to certain facts in the record before it showing a fraudulent intent on the part of Sotak. In support of the judgment of the trial court it assumed the jury made an implied finding against the defendant on the issue of fraudulent intent. ■ The record before us also contains evidence likewise sustaining the implied finding of the jury in the instant case. Excepting the testimony of the defendant there was no evidence that the money obtained did not go into his own pocket. When the check in controversy had been paid by the bank and returned to the defendant he placed it in a locked drawer underneath a lot of other papers where it was hidden. In drawing said checks he not only signed his wife's name without authority but he sought to imitate her signature. The last act he attempted to explain by saying he had done so hundreds of times when signing other papers. However, he introduced no documents corroborating that oral testimony. A prior conviction was pleaded against him which he admitted. That impeachment was of such force that we must assume the jury refused to believe the defendant's explanations.

■ In this court the defendant contends that the testimony of his wife should not have been received in evidence against him except with his consent. (Pen. Code, sec. 1322.) When the wife was called to the witness stand the defendant made no objection to her testifying against him and thereafter fully cross-examined her. The defendant did not at any time make the point in the trial court. He may not now present the point for the first time. (*People* v. *Singh,* 182 Cal. 457,

482–484 [188 Pac. 987].) But, in view of the facts, we are not to be understood as holding that the point had merit if presented in due time.

■ The defendant asked and the trial court refused to give an instruction regarding the intention of the defendant to defraud. In refusing to give the instruction the trial judge wrote thereon, ''Given in my instructions''. The defendant contends that it was not so given. An examination of the record discloses that he is mistaken and that the fraudulent intent was the subject-matter of at least four different instructions.

■ The trial court very fully and completely instructed the jury on every element involved in the action on trial. Having done so the court proceeded to give an instruction as follows: ''When, ladies and gentlemen of the jury, if you are satisfied that the People of the State of California have made out a case against the defendant you will so find by returning a verdict of guilty as charged in the information. And if you are not satisfied of his guilt to a moral certainty and beyond all reasonable doubt you will return a verdict finding him not guilty.'' The defendant contends that in substance the instruction just quoted authorized the jury to determine both questions of law and questions of fact. However, when read in connection with the full set of instructions which preceded it the criticism has no merit.

■ The defendant makes several assignments of misconduct on the part of Mr. Garry, the assistant district attorney. During the argument Mr. Garry, among other things, said: ''Now here is the situation: This man marries a meal ticket; and, contrary to the general custom, whereby the average groom gives to the average bride a present, she gives him a wedding present of $500.'' Whether the statement was proper or improper no objection or assignment of misconduct was made in the trial court and it is too late to raise an objection at this time. ■ At another time, holding the exhibits in his hand, Mr. Garry said: ''Now, you can take these into the jury room; and right now, Mr. Mills, (a juror) I will hand these exhibits to you. And here is the signature of Bruce Van Skander and Ellen Van Skander. Here it is again. And here, at the bottom of this agreement, it is again. And I want to call your attention to that, and you can look it over more carefully in the jury room, along with the other

jurors.'' The defendant contends that the exhibits should not have been handed to the jury until that body made a request for them. But we are not prepared to say an error was committed. (Pen. Code, sec. 1137.)

As hereinabove recited the defendant took the stand as a witness in his own behalf. In making his argument to the jury Mr. Garry presented all questions regarding the previous convictions of the defendant in the same manner he would have done if the defendant were merely a witness instead of both defendant and witness. In doing so no error was committed. (*People* v. *Granillo*, 140 Cal. App. 707, 714–718 [36 Pac. (2d) 206].)

Again the defendant assigns as misconduct on the part of the district attorney a passage in his closing argument: ''When that man (referring to the defendant) got on the stand and told you that one night in June he took his wife aside and had a talk about his trip and she signed it and he put it away in a drawer he was a liar by the clock. Now assign that as misconduct.'' Accepting the suggestion of the district attorney the defendant did assign the statement as misconduct and at this time he presses the point. The point is well founded and the statement never should have been made in the instant case nor in any other case. Nevertheless we think it was not prejudicial error. The statement was made in a battle of words between opposing counsel. Just as soon as the trial court could do so it delivered a sweeping admonition informing the jury with much care that vituperation of counsel should not weigh with the jury.

In another point the defendant asserts although he admitted the prior convictions when arraigned that when the jury was impaneled the clerk read to the jury the information *in toto*. It is sufficient to state that the record does not disclose the fact.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.