[Crim. No. 2712. First Dist., Div. One. June 29, 1951.]

THE PEOPLE, Respondent, v. JOHN HENRY LEWIS, Appellant.

John Henry Lewis, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PETERS, P. J.—Plaintiff was charged with and convicted of two violations of section 470 of the Penal Code. Each charge involves the forgery of a check. One of the checks is in the amount of $325, is made payable to "Robert Washington," is dated September 26, 1949, is signed as maker "Pauline Salisbury Co.," and is endorsed "Robert Washington." The other check, dated September 19, 1949, is in the sum of $65, is made payable to "Robert Washington, Jr.," is signed as

maker "Pauline Salisbury Co.," and is endorsed "Robert Washington." Defendant was found guilty of forging both checks, and appeals from the judgment. He urges that the evidence is insufficient, that he was convicted on perjured testimony, that he was prejudiced by the refusal of the court to grant a continuance, and by its refusal to issue subpoenas for certain witnesses.

An examination of the record demonstrates that the evidence is ample to support the conviction, and that no error was committed during the trial.

Both checks were signed as maker, "Pauline Salisbury Co." It is admitted that there was a Pauline Salisbury, that she operated a furniture store in Oakland, that defendant knew her, and that he had had several business transactions with her in which she had issued to him at least three valid checks. On August 9, 1949, she purchased from defendant some secondhand furniture and gave him a $12.50 check as a deposit made out to his order and signed "Salisbury Furniture Co. Pauline Salisbury." On August 11, 1949, she picked up the purchased furniture and gave to defendant a check for $325 in payment for the furniture. This check named defendant as the payee and was signed the same as the $12.50 check. Mrs. Salisbury had difficulty in writing, and admittedly, at her request, defendant wrote out everything on this check except the signature. On this same date, August 11th, she purchased from defendant another piece of furniture for $12.50, and in payment therefor allowed him to keep the original $12.50 check given as a deposit. On September 20, 1949, she purchased some more furniture from defendant and gave him a check for $27 payable to him and signed as were the other two. All three checks were drawn on the Oakland Bank of Commerce. These three checks were all valid, and are not involved in the charges here under consideration.

A teller of the South Berkeley Branch of the Bank of America testified that he knew defendant as a customer of the bank. He further testified that about noon on September 26, 1949, defendant presented to him at the bank the $325 check dated September 26, 1949, and requested that it be cashed. This check was drawn on the Oakland Bank of Commerce, was payable to and endorsed "Robert Washington," and signed by "Pauline Salisbury Co." The teller was suspicious of the maker's signature because, on September 21, 1949, he had cashed, for some unidentified person, the $65 check dated September 19, 1949, payable to "Robert Wash-

ington, Jr.," signed "Pauline Salisbury Co." and drawn on the Oakland Bank of Commerce. That check had been returned to the Bank of America marked "Signature Irregular." For that reason, when the $325 check was presented, the teller told defendant, whom he recognized, that he had to consult a bank officer. When he returned to the teller's window defendant was gone, and never did return to claim the check. When defendant was arrested in November, 1949, the teller, at the police station, identified defendant as the person who had tried to cash the check. Defendant did not then deny the accusation. When arrested, defendant told the officers that he had no knowledge of the two checks and had never seen them before.

Mrs. Salisbury testified that she did not draw or sign the checks of September 19th or 26th, nor did she give permission to defendant to draw or sign them.

At the trial defendant stipulated that he had written the endorsement "Robert Washington" on the $325 check, and had written all the handwriting, including the signature of the maker and the endorsement, on the $65 check. He denied trying to cash or cashing either check. He told a most fantastic and wholly uncorroborated story of being kidnapped by four unidentified persons on the night of July 31, 1949, of being taken for a ride and robbed, and of being returned to his home, and, at gunpoint, being forced to endorse the $325 check and to make out and endorse the $65 check. He claimed that he immediately reported all of this to the Berkeley police. The police denied that any such complaint had been made. Apparently defendant selected the date of July 31, 1949, for this story, because on that night he had been engaged in an argument and fight with a Charlie Heard or Hard, and did complain to the police about that man, and did cause his arrest. Defendant admitted, however, that Heard or Hard had nothing to do with the kidnapping or checkwriting events, and that his fight with Heard or Hard occurred after he had been kidnapped. It is quite significant that on July 31, 1949, defendant did not know Pauline Salisbury, but met her for the first time on August 9, 1949, nine days later, when she purchased his furniture. He admitted that when he met her he did not tell her or anyone else (except, as he claimed, the Berkeley police) that he had written her name on one check and endorsed the other one. He tried to explain this by testifying that a Berkeley police inspector had told him not to tell anyone about those events. The inspector denied telling

this to defendant, or of knowing anything about the kidnapping story.

In support of his denial that he had cashed the check dated September 19, 1949, for $65 on September 21, 1949, and had tried to cash the $325 check on September 26, 1949, defendant testified that he was not in Berkeley on those dates. He testified that, during the daylight hours of September 19th, 20th and 21st, he was in Hayward trying to secure employment with Tarmen and Bechtel Construction Company. This story is uncorroborated.

He also presented an alibi for September 26th. He testified that on Sunday night, September 25, 1949, he left Oakland by bus and went to Los Angeles, where he arrived at about 10:30 a. m. on September 26, 1949. His story is that he remained in Los Angeles, staying at the home of relatives, Mr. and Mrs. Burke, from the morning of September 26th until Friday, September 30, 1949, when he returned to Oakland. He testified that, on the day of his arrival in Los Angeles, September 26, 1949, he, in the company of Mr. Burke and a Reverend Peters, a minister of the Baptist church, visited two hospitals and a funeral parlor. He also testified that he remembered that on the day of his arrival Mrs. Burke had had a tooth pulled.

The Reverend Peters testified that defendant was in Los Angeles in September, 1949, and verified defendant's story that defendant had accompanied him to the hospitals and to the funeral parlor. He could not fix the precise date this occurred, but was quite sure that it was towards the end of September, 1949.

Mr. Burke testified as to defendant's visit to the Burke home in Los Angeles, but he had no independent recollection of the precise date. He fixed the date of the start of the visit as September 26, 1949, because Mrs. Burke's dentist told him that she had had a tooth pulled that day, and he remembers that Mrs. Burke had had a tooth pulled the day that defendant arrived. He contradicted defendant as to the date of the visits to the hospitals and funeral parlor, fixing these events as several days after defendant had arrived.

Mrs. Burke had no independent recollection of the date of defendant's visit, but she too fixed the date as September 26, 1949, based entirely on the fact that she had had a tooth pulled the date defendant arrived, and her dentist told her that a tooth had been pulled on September 26, 1949. She admitted that she had had teeth pulled before and after

September 26, 1949; that she was having her teeth removed preparatory to securing false teeth, and went to the dentist whenever she could get off work. She did not get her false teeth until sometime after Christmas, 1949. It is a reasonable inference from the evidence that this visit to Los Angeles occurred about a week later than testified to by defendant.

When defendant was arrested in November, 1949, he was working for Tarmen and Bechtel Construction Company under the name of William Draper. He testified that his real name was Draper, or Drapers, or Drappers, and that he had assumed the name of John Henry Lewis while boxing in the army. He testified that, although he had occasionally used the name Draper, he was usually known as John Henry Lewis. He got very confused over whether he knew or had ever heard of a Robert Washington. He first denied knowing such a person, but finally admitted that he had worked with and knew a man by that name. Although at first denying it, he finally admitted that he had worked on two jobs under the assumed name of Robert Washington. He claimed that Washington had given him his union card to use, and that is why he assumed that name. Washington denied this story.

Defendant admitted that he had been convicted in 1937 and served a term for grand theft in the state prison.

The point need not be labored that the evidence is ample, sufficient and substantial to support the conviction. The jury just did not believe the kidnapping story. The alibi for September 21, 1949, was unsupported. The alibi for September 26, 1949, was not believed by the jury. The corroborating evidence of Peters and the Burkes was not satisfactory. The jury undoubtedly concluded that this visit occurred at least a week later than testified to by defendant. The defendant admits writing the endorsement on one check, and all of the handwriting, including the endorsement, on the other. The bank teller positively identified defendant as the one who tried to cash the $325 check. The jury has resolved these conflicts against defendant, and its findings are amply supported.

The claim that he was convicted on perjured testimony simply amounts to the unsupported assertion that he told the truth, and the prosecution witnesses lied. The jury passed on this question of credibility, and its determination cannot be upset by this court.

Defendant argues that he was prejudiced by a denial

of a requested continuance. After the prosecution had rested its case, which occurred late one afternoon, defendant's counsel, the public defender, the next morning informed the court that Peters and the Burkes, although served with subpoenas, had failed to appear, and requested a continuance until they could be brought up from Los Angeles. The court issued an order for bench warrants for these witnesses. Counsel for defendant then requested a continuance to that afternoon. This request was granted. That afternoon the public defender put Lewis on the stand as his first witness. Later the three witnesses appeared and testified. It is obvious that defendant was not entitled to an indefinite continuance, and that he was in no way prejudiced by what occurred. He had the full benefit of the testimony of the witnesses in question.

■ Defendant claims that he requested subpoenas for five witnesses and was told that they had moved out of town. Since being in prison, he alleges, he has received letters from these persons and that they have stated that they had not moved. There is no record to support these assertions. The point cannot be considered on this appeal.

These are all the points raised by defendant who appears in propria persona. ■ There is one other point that perhaps should be mentioned. The prosecution, over objection, introduced another check for $10 which, it was claimed, was forged by defendant. This check was drawn on the Oakland Bank of Commerce, is dated September 27, 1949, names "Earle E. Remington" as payee and endorser, and is signed "Pauline Salisbury." This check was secured from an unidentified white man (the defendant is a Negro) who attempted to cash it by presenting it to Mrs. Salisbury. The expert evidence is that the face of this check, including the signature, was written by defendant. This check was apparently the basis of a separate charge of forgery against defendant, which charge was dismissed at the preliminary hearing. The admission of this evidence in the present trial, in spite of the dismissal, was not error. (*People* v. *Frank*, 28 Cal. 507, 516; *People* v. *Follette*, 74 Cal.App. 178, 212 [240 P. 502].) These cases hold that a verdict of acquittal of a crime does not render evidence of that crime inadmissible on another charge, where the evidence of the other crime of which defendant has been acquitted is offered on the present trial to show guilty knowledge. That is this case.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.