[Crim. No. 3135.   First Dist., Div. Two.   Oct. 13, 1955.]

THE PEOPLE, Respondent, v. WALTER FINN,
Appellant.

Benjamin M. Davis, Edward Mancuso, Public Defender, and Joseph I. McNamara, Assistant Public Defender, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of conviction after jury verdict in the Superior Court in and for the County of San Francisco. Appellant was convicted of the crime of conspiracy to violate section 11500 of the Health and Safety Code and with violation of that section. Appellant pleaded not guilty to both of the crimes charged. The indictment was amended to charge appellant with two prior felony convictions, which appellant admitted. Motion for new trial was denied.

The sole issue raised on this appeal is that the court committed prejudicial error in refusing to give an instruction requested by appellant on the doctrine of entrapment.

On September 8, 1954, Mr. Bonham, a special employee of the Federal Narcotic Bureau introduced Mr. Durham, a United States Treasury enforcement agent, to appellant, Walter Finn. Bonham then told appellant that Durham had some girls who needed narcotics. To an inquiry as to whether he was still doing business, appellant answered, "Yes." Appellant then asked Durham, who was using the assumed name of Nate, if he was "the law," and Durham reassured him by an evasive answer. Appellant asked that he be paid, departed, and returned in 15 or 20 minutes with narcotics which he delivered to Durham. He then asked Durham to drive him to the vicinity of Fillmore and Geary Streets, as he had other people to take care of.

On September 9, Durham telephoned appellant at the number which he had secured from him on the previous day which appellant had told him to call whenever he wanted narcotics. Shortly afterward they met. Durham said he would like to get twelve papers of the "stuff," and appellant stated that he could give him twelve $5.00 papers for $50. Durham gave him the money, and in 10 or 15 minutes he returned with the narcotics.

On September 15, 1954, Durham met appellant at about 5:30 p.m. Appellant said, "I have some talk for you" and stated that he had a new connection who was handling good stuff. He inquired if Durham needed any. Durham said he could use two spoons. When appellant said it was "very good stuff," Durham said he could use four spoons if the price was right. The agent then drove appellant to Pierce and Ellis Streets where a Cadillac drove up and parked in front of the agent's car. Appellant told Durham to wait, saying "there is my connection." The driver of the Cadillac was appellant's codefendant Lacey. After some conversation,

appellant and Lacey went into Lacey's residence. Appellant on his return told Durham that Lacey was his big connection who could get the "stuff." He quoted a price of $100 for four spoons, and asked for the money. When Durham protested about paying at that time, appellant told him that Lacey was all right and that it was the only way the deal could go through. Durham gave appellant $102, and appellant went back to Lacey's residence.

Appellant and Durham met shortly after midnight on September 16. Appellant told Durham that he should not have gone to Lacey's residence, that Lacey didn't like it, and that he had a hard time getting the "stuff." He delivered 74 grains of heroin to Durham.

Appellant testified in his own defense. He said that Bonham whom he knew previously, asked him to meet a friend who wished to purchase some narcotics. Appellant said that he told Bonham that he did not have any narcotics. Bonham said his friend was "all right." Bonham told appellant that Durham, whom he introduced as "Nat," had girls working for him and that he needed the "stuff" for them. Bonham asked appellant if he was still doing business, and thereafter appellant agreed to take care of Durham. Durham telephoned appellant on September 9, 1954, asking for more narcotics which appellant supplied to him. Appellant said he told Durham that he was lucky he was doing this for him.

On September 15, appellant said that he met Durham who told him that he had two girls going to Reno and that he wanted more narcotics. Appellant told him that he would try to get some. Durham and Bonham went to the latter's house where the heroin was tested by Bonham. Appellant smoked some of the heroin on this occasion. He claimed that he made no profit out of these sales.

Appellant admitted having been twice previously convicted of having heroin in his possession.

Appellant argues that the criminal intent did not originate in the mind of the accused. He says that there is no evidence that he offered to purchase narcotics for either Durham or Bonham except at the request of Durham. He testified that the only reason he purchased the narcotics for them was because of their statements that Durham had "girls" who were sick, that the only reason he purchased such a large supply on September 15 was because Durham told him he was taking the girls to Reno to work and would need sufficient

until he returned to San Francisco. Appellant testified that he knew what it was to be "sick."

The defense of entrapment presents the issue of whether intent to commit the crime was furnished by the officer or the defendant. (*People* v. *Fong,* 129 Cal.App.2d 667 [277 P.2d 859].) It is a question of fact whether the criminal intent was first conceived by the law enforcement officers or whether they simply encouraged defendant's boldness. (*People* v. *Lagomarsino,* 97 Cal.App.2d 92 [217 P.2d 124].) Since here entrapment was appellant's sole defense, and since this matter had been presented to the jury by argument, appellant maintains that the instruction, which was correct in form, should have been given.

The trial court herein was clearly of the opinion that this case was parallel on its facts to *People* v. *Alamillo,* 113 Cal. App.2d 617 [248 P.2d 421], in which an instruction on entrapment was held to have been properly refused. In the cited case defendant testified that the officer came into his barber shop about 5 p. m. with a man by the name of Rutherford; that he was cutting hair and there were several people in the shop. After some time had elapsed, Rutherford approached defendant and said "I am very sick. I have been very sick and I haven't been able to get anything." Defendant asked him what he meant and he replied, "You know I am a hype." Defendant told him that he was in the wrong place, that there were "a lot of guys peddling" and why didn't he go over and see them. Defendant said he couldn't do anything for him, but just then he saw a fellow passing. He called this person into the shop, talked to him in Spanish telling him that there was a fellow who was sick. Defendant, who knew this person was selling narcotics, procured a capsule from him and gave it to Rutherford who gave defendant $5.00 which he put in his pocket.

The court there stated that the instruction was properly refused because there was a total lack of evidence that defendant was inveigled into the commission of the crime or that the officers were the procuring cause or instigators of the criminal intent. No persuasion or inducement was offered for the sale other than "the ordinary conversation that would take place between a willing seller of narcotics and a willing buyer." It was noted that the fact that the operator appeared to be ill and in distress would not justify an inference of entrapment "where the evidence of appellant's willingness to commit the offense and assume the chance of apprehension is

abundantly established, not alone by surrounding facts and circumstances, admissions of appellant, but by his own testimony given at the trial. Therefore, no prejudicial error was committed by the trial court in refusing to instruct the jury on the law of entrapment. That issue was not sufficiently raised by the evidence.'' (And see *People* v. *Jackson,* 106 Cal.App.2d 114 [234 P.2d 766].)

In *People* v. *Braddock,* 41 Cal.2d 794 [264 P.2d 521], the court quoted with approval the following language from *People* v. *Schwartz,* 109 Cal.App.2d 450, 455 [240 P.2d 1024] : ''It is not the entrapment of a criminal upon which the law frowns, but the seduction of innocent people into a criminal career by its officers is what is condemned and will not be tolerated. When an accused has a preexisting criminal intent, the fact that when solicited by a decoy he committed a crime raises no inference of unlawful entrapment.''

Applying the rules of law to the facts of this case it is clear that there was no unlawful entrapment and hence the trial court was correct in refusing the instruction on entrapment.

No prejudicial error appearing, the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.