[Crim. No. 3130.   First Dist., Div. Two.   Feb. 21, 1956.]

THE PEOPLE, Respondent, v. ALFRED JALIFI,
Appellant.

Alfred Jalifi, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, John S. McInerny, Deputy Attorney General, N. J. Menard, District Attorney (Santa Clara), and J. W. Feeley, Deputy District Attorney, for Respondent.

KAUFMAN, J.—Appellant, Alfred Jalifi, appeals from a judgment of conviction after jury trial on a charge of viola-

tion of section 11500 of the Health and Safety Code. The information also alleged a prior felony conviction for violation of the aforesaid section. When arraigned on January 14, 1955, appellant pleaded "not guilty" to the charge and admitted the prior conviction.

John Santiago was an operative employed by the State Bureau of Narcotic Enforcement for the purpose of making narcotic purchases from suspected peddlers in the San Jose area. On the evening of December 7, 1954, Santiago contacted appellant, Jalifi, whom he knew of by the name of Califfa on a street corner in San Jose, in an attempt to purchase narcotics. This was the first time Santiago had met appellant. Santiago offered $25 for six capsules of heroin. At this point they were approached by Charles Rodriguez. Appellant, having seen Rodriguez approach, told Santiago that he would not sell him the heroin, and Rodriguez and appellant went into a nearby bar. Rodriguez soon returned and offered to make the heroin purchase for Santiago. Appellant returned while Rodriguez and Santiago were talking, and told Santiago that he would not sell to him because he didn't know him, and that he would have to give the money to Rodriguez. Appellant would then give the narcotics to Rodriguez to deliver to Santiago. Santiago handed the money over to Rodriguez, whereupon both Rodriguez and appellant went back into the bar. In a short while Rodriguez came out and followed Santiago to a nearby parking lot. On the way, Rodriguez said that he could get only four capsules from appellant instead of six, but could get the other two later. At the parking lot Rodriguez was arrested by Officer Bishop, who had prearranged to have Santiago lead the suspect to that location. Rodriguez was brought into the police station.

Santiago returned to the site of the original meeting about 15 to 30 minutes later, where he again met appellant who gave him the remaining two capsules. As he delivered it, appellant asked if Rodriguez had sent Santiago for the heroin, and Santiago told him he had. Santiago gave these capsules to Officer Bishop, who turned them over to Inspector Savage of the State Bureau of Narcotics. Narcotics chemist Inspector Bergmans of that department testified that the capsules contained two grains of heroin.

Ramon Villa, another operator for the Bureau of Narcotics corroborated Santiago's testimony, stating that he knew appellant by the name of "Califfa"; that he had met him on

Post Street in San Jose where they discussed a possible narcotics purchase. Appellant told Villa that he was afraid that Santiago might be an undercover narcotics agent, but Villa reassured him. Villa testified that he was working with Santiago, and that he had told Santiago that appellant was a possible source for a narcotics purchase. Villa saw appellant in Los Angeles some three weeks later and had him arrested.

Appellant took the stand in his own defense, testifying that he had been in Los Angeles from November until his arrest on December 20, 1954, and had not been in San Jose on the night of December 7, 1954. He was unable to identify his employer in Los Angeles other than as ''Johnny,'' nor could he state the employer's trade name or place of business. He said that it was work concerned with cutting lawns and fixing flowers. Rodriguez testified on behalf of appellant, saying that he had made the narcotics purchase on the night of December 7, 1954, for Santiago from a man named Califfa who was not the same person as appellant. He admitted a previous conviction of a felony.

The witness Martinez testified for appellant. He stated that Santiago had arrested him, taken him in, and told the officers, ''Here's Califfa for you.'' He admitted to being under arrest at the time of trial for sale and possession of narcotics, and that he had previously been convicted of the felonies of rape and assault with a deadly weapon.

Appellant, appearing in propria persona on this appeal, contends that Santiago is a perjurer and that his testimony is unworthy of belief. ■ Appellant's brief is without citation of authority in support of his contentions, and for this reason alone the appeal could be dismissed. (*People* v. *MacArthur*, 125 Cal.App.2d 212, 217 [270 P.2d 37] ; *People* v. *Gidney*, 10 Cal.2d 138, 142 [73 P.2d 1186] ; rule 15a, Rules on Appeal.)

There is no merit in appellant's contention that he was convicted on the unsupported testimony of a perjurer. The jury chose to believe Santiago's testimony rather than that of appellant and his witnesses. ■ The statements of a witness believed by a jury cannot be attacked on appeal unless it is ''a physical impossibility that they be true or their falsity be apparent without resorting to inferences or deductions.'' (*People* v. *Klinkenberg*, 90 Cal.App.2d 608, 627 [204 P.2d 47, 613].) The falsity, in order to render such testimony unbelievable on appeal, must be ''apparent without

resort to inferences or deductions." (*People* v. *Pettis,* 95 Cal.App.2d 790, 794 [213 P.2d 731].) Much is made of the fact that Santiago had known of appellant by the name of "Califfa" instead of Jalifi. This is immaterial since Santiago positively identified appellant Jalifi as the person referred to by the name of "Califfa."

Appellant states that the operatives Santiago and Villa both had long arrest records. There is no such testimony in the record, and appellant's brief does not claim that such impeaching evidence was improperly excluded. This matter cannot therefore be raised on appeal. (*People* v. *Van Skander,* 20 Cal.App.2d 248, 256 [66 P.2d 1228].)

Although appellant does not argue that he was the victim of entrapment, he refers to the operatives, Santiago and Villa, as paid informers hired by the Narcotics Bureau for the purpose of entrapment. If he intends this reference as an argument on the defense of entrapment, it is sufficient to say that he raised no such defense in the trial court, but relied entirely on his alibi that he was in Los Angeles when the crime was committed. The defense of entrapment may not be raised for the first time on appeal. (*People* v. *Branch,* 119 Cal.App.2d 490, 495 [260 P.2d 27].) It is also well settled that the fact that a defendant committed a crime when solicited by a decoy, raises no inference of unlawful entrapment. (*People* v. *Roberts,* 40 Cal.2d 483, 489 [254 P.2d 501] ; *People* v. *Branch, supra*; *People* v. *Finn,* 136 Cal.App.2d 152 [288 P.2d 281].)

No error appearing in the record before us the judgment must be affirmed.

Nourse, P. J., and Dooling, J., concurred.