[Crim. No. 7504. Second Dist., Div. One. May 3, 1961.]

THE PEOPLE, Respondent, v. WILLIE V. SEALS, Appellant.

Willie V. Seals, in pro. per., for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and C. Michael Gianola, Deputy Attorneys General, for Respondent.

LILLIE, J.—The jury returned a guilty verdict of first degree burglary against defendant and found a prior felony conviction to be true; his application for probation was denied and defendant was sentenced to the state prison.

The evidence viewed in the light most favorable to the verdict, reveals a burglary of premises owned by Oliver Coleman and theft of his Colt army Special 32/20. Coleman is the owner of a house divided into two apartments, one occupied by him, the other, by defendant. There is one bathroom and a common hallway from which a door leads to Coleman's bedroom. On June 10, Coleman went to Texas and left the premises in charge of his nephew, Reverend Cornelous, to whom he gave the keys. He returned on June 25, around 5 p. m.; Coleman looked through the apartment and observed his gun and a box of shells in a drawer of the bureau. At 9:30 p. m. he again left after securing the premises; he returned about 12:30 a.m. on June 26, and retired.

At approximately 1:45 a. m. on June 26, Officer Semler and his partner stopped defendant on the street; he had a noticeable bulge in the hip area of his trousers and shirt and was carrying in his left hand what appeared to be a box of shells. A search of his person revealed a gun in the waistband of his trousers, and in his hand, a box of shells; the gun and shells were the property of Coleman. Defendant told the officers he was returning the gun to his uncle "Willie" who lived in a building, to which he pointed; when taken to a nearby police car defendant said he had been keeping the gun for his uncle, Wallace Coleman, who had just returned from Texas and he was in the process of returning it; thereafter at the station, he told officers the gun belonged to his uncle, William Coleman, who was called "Willie"—and that although the latter really wasn't his uncle he had known him all of his life and called him "uncle."

At about 3:30 a. m. on June 26, officers awakened Coleman and asked him to look in the bureau drawer; Coleman found his gun and shells missing; he had given no one permission to take them.

The next day, June 27, defendant told Officer Limon that he had purchased the gun from the gardener; that immediately prior to his arrest he was on his way to a gambling place where he had, some time previously, won a considerable sum of money from an unknown man who threatened him and he was taking the gun along for protection.

In his defense defendant denied entering Coleman's bedroom and removing the gun and bullets; he testified he met Coleman's gardener, Cornelous, at a gambling house on June 25, where Cornelous borrowed $10 from him in return for the gun and bullets he left as collateral. He denied the various conversations Semler and Limon testified he had with them after his arrest.

Reverend J. L. Cornelous, Coleman's nephew, denied that he had ever gambled with defendant, borrowed money from him or gave him any gun or shells.

Appellant's claim that Coleman and Officers Becker, Semler and Limon perjured themselves warrants little discussion in the absence of a showing of the precise testimony of which he complains, the manner in which the alleged perjured testimony affected him or was material, that any perjury existed at all, and why he did not bring the asserted perjury to the attention of the trial court.

■ In connection with each prosecution witness, naming him, but without designating the portion of the testimony he asserts to be false, appellant recites the conclusion that each "did perjure himself," referring to the entire testimony of each witness. He neglects to point out the page of the record where the purported error is alleged to have occurred, presents no argument in support of his accusations of perjury, and cites no authority. For these reasons the appeal may be dismissed, for we are under no obligation to search the record to ascertain a sound legal reason for reversing the judgment. (*People* v. *Gidney*, 10 Cal.2d 138, 142 [73 P.2d 1186] ; *People* v. *Jalifi*, 139 Cal.App.2d 368 [293 P.2d 878] ; rule 15(a), Rules on Appeal.) ■ Further, when arguing for a reversal of a conviction on the basis of perjured testimony the burden is upon the appellant to designate specifically the precise testimony which he asserts is perjured and thus untrue, state in detail the facts in connection with the alleged perjury, and point out in what manner the perjured testimony was material. (*In re Swain*, 34 Cal.2d 300 [209 P.2d 793].)

Actually most of the testimony of the four witnesses is without dispute, covers matters admitted by the defendant under oath to be true, and relates to facts not material to his cause. Coleman, the first witness, is the man whose apartment was burglarized and whose property was stolen; Becker, a deputy sheriff took defendant's fingerprints and testified they were the same as those appearing in Arkansas state prison records; Semler, a police officer, arrested defendant, found Coleman's gun and shells on his person, and talked with defendant; and Limon is one of the investigating officers to whom defendant made certain statements explaining his possession of the gun. It is obvious that the entire testimony of each of the four witnesses as alleged, could not be untrue—for instance—their names and occupations, the burglary of Coleman's apartment, the theft of his property, the taking and comparison of defendant's fingerprints and so on; nor could those matters which appellant himself admitted under oath, be false—that he lived on Coleman's premises, that he had Coleman's gun and shells in his possession on the night of June 25 and in the early morning of June 26, and that he was arrested. Actually defendant did not deny any of Coleman's testimony—that his room was burglarized, his gun and shells stolen, and that those found in defendant's possession belonged to him; defendant merely says he did not commit the burglary, that he lawfully obtained the gun and shells, and

that he did not make the conflicting and inconsistent statements attributed to him, to Semler and Limon.

Beyond a normal conflict in the evidence, created by the testimony of the defendant, there is nothing in the record to show that any of the prosecution's witnesses testified falsely. After hearing all of the evidence the jury, as it had a right to do, chose to believe the testimony of the five prosecution witnesses and rejected the defendant's statements under oath, for inherent in its verdict is the implied finding that the testimony of Coleman, Becker, Semler, Limon and Cornelous was true and that of the defendant was false. Mere inconsistencies and contradictions in the testimony of witnesses do not constitute perjury; at most they create a conflict in the evidence which the trier must resolve by the process of determining credibility of the witnesses and weighing their testimony. (*People* v. *Ashley*, 42 Cal.2d 246 [267 P.2d 271] ; *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].) "The statements of the witnesses believed by a jury cannot be attacked on appeal unless it is 'a physical impossibility that they be true or their falsity be apparent without resorting to inferences or deductions.' (*People* v. *Klinkenberg*, 90 Cal.App.2d 608, 627 [204 P.2d 47, 613].)" (*People* v. *Jalifi*, 139 Cal.App. 2d 368, 370 [293 P.2d 878] ; *People* v. *Pettis*, 95 Cal.App.2d 790 [213 P.2d 731].) There is no showing that either factor is present in the testimony of any of the prosecution witnesses.

 Further, appellant has raised the issue of perjury for the first time in the present proceeding; his claim was never, at any time, mentioned to the trial court and for his belated attack on the testimony of the prosecution witnesses he has given no explanation. He must present the matter first to the trial court or fully disclose his reason for the delay in raising the question. (*In re Swain*, 34 Cal.2d 300 [209 P.2d 793].) "If there is anything in the contention of perjury, no excuse is shown why it could not have been investigated and have been presented to the trial court on the motion for new trial. (*People* v. *Lewis*, 105 Cal.App.2d 208 [233 P.2d 30] ; *People* v. *Hall*, 25 Cal.App.2d 336 [77 P.2d 244] ; *People* v. *McCoy*, 58 Cal.App. 534 [208 P. 1016].)" (*People* v. *MacArthur*, 125 Cal.App.2d 212, 218 [270 P.2d 37].) The record reveals that no motion for a new trial was made in the lower court.

 Appellant's final point is that the attorney who represented him at the trial failed to fulfil his duties by failing to call certain witnesses on his behalf. A review of the record

shows neither any valid ground for complaint against his counsel nor that defendant was ever before dissatisfied with the representation counsel gave him. His lawyer was of defendant's own choice and we find nothing to convince us that he did not adequately and ably represent him. He cross-examined each prosecution witness at length, made proper and timely objections and motions, and was proficient in the examination of defendant in his defense. Defendant has not seen fit to inform us concerning the ''certain witnesses'' counsel failed to call—that he actually contemplated calling them, who they were, whether they were available, the testimony they were expected to give and its materiality to defendant's cause, and why they were not called; nor does the record disclose any of these matters or that they were ever brought to the attention of the trial judge or his counsel. Other than the bare statement made by appellant in his brief that counsel failed to call ''certain witnesses,'' there is nothing before this court relative to his claim. Neither at the time of the trial nor thereafter did defendant ever advise the lower court that his counsel had failed to fulfil his duties or that he was in any way dissatisfied with him. ■ ''If defendant felt his counsel did not adequately represent him he should have complained to the trial court and given that court an opportunity to correct the situation. In the absence of such complaint the acts of defendant's counsel are imputed to him. (*People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657]; *Sayre* v. *Commonwealth,* 194 Ky. 338 [238 S.W. 737, 24 A.L.R. 1017, 1024]; *People* v. *Figueroa,* 134 Cal. 159, 163 [66 P. 202].)'' (*People* v. *Youders,* 96 Cal.App.2d 562, 569 [215 P.2d 743].) To the same effect is *People* v. *Smith,* 164 Cal. App.2d 510 [330 P.2d 678]; *People* v. *Hood,* 141 Cal.App.2d 585 [297 P.2d 52]; *People* v. *Wilkerson,* 130 Cal.App.2d 330 [279 P.2d 56]; *People* v. *Rucker,* 186 Cal.App.2d 342 [9 Cal.Rptr. 1].

Defendant had a fair and impartial trial; counsel of his own choice was substituted for former counsel early in the proceedings; and the trial was continued several times from September 14 to October 10, 1960, giving defendant ample opportunity to adequately prepare his defense. We can only conclude the existence of one or more of several facts none of which would justify serious consideration by this court—that defendant did not think of calling the purported witnesses until this appeal; or that if he intended to call them,

he neglected to so advise his counsel; or that his counsel in the exercise of his judgment believed the witnesses would be of no assistance, or even harmful, to the defense; or that defendant never intended to call any witnesses on his behalf; or that actually no such witnesses ever existed and defendant's contention here is merely a ruse employed to further delay the proceedings.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.