[Crim. No. 3484.    Third Dist.    Oct. 28, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY CORSON, Defendant and Appellant.

Harry L. Corson, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John Giordano, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Harry Corson was charged by information with the crime of assault with a deadly weapon. He was found guilty as charged by a jury, probation was denied, and judgment was pronounced sentencing him to a term in the state prison. He has appealed from the judgment entered.

The factual situation as shown by the record may be summarized as follows: Corson and his wife lived in a house on a ranch owned by Melvin Senna in Trinity County. On the morning of September 4, 1961, Corson and his wife took a truck of Senna's to go into town to attend to certain errands. When the Corsons failed to return, Senna went to town to learn the cause of the delay. Senna found his truck parked outside a bar. He went to the entrance and saw Corson and his wife sitting at the bar and he told them he was taking the truck. Mrs. Corson came out and asked for a ride back to the ranch. Corson came out and attempted to pull his wife from the vehicle. Senna pulled Corson away. Senna returned to his

ranch. About 6:30 p.m. Howard Palmer drove Corson to his house on the ranch. Palmer then drove his car up the road to where Senna was standing and told Senna and Mrs. Corson, ''Harry's really pushed out of shape. [H]e's going to shoot you.'' Senna then saw Corson come out of his house armed with a double barreled shotgun. Corson shouted that he was going to kill the ''Portugee.'' He broke the gun when he shouted and loaded it. Corson then started walking toward Senna. Senna got into Palmer's truck and was driven to his cabin. He entered his house, got his rifle and returned to the front porch, where he shouted to Corson to stop. Corson continued to walk toward Senna with the shotgun pointed in Senna's direction. Senna fired a warning shot over Corson's head and told Corson not to come any closer. Corson turned around and walked back to his house. When Senna fired the shot Corson was about 175 feet away. The deputy sheriff who arrested Corson testified that he found Corson's shotgun loaded with two shells.

Corson testified in his own defense. The main point of his testimony was that he had taken six pain or nerve pills during the day; that he had not eaten anything; that he drank beer and was pretty drunk. He contended he blacked out. He testified that he could not recollect picking up his shotgun, loading it or walking toward Senna. Corson claimed that the first he could recall was the firing of the shot. He recalled telling Senna he missed and turning around. His next recollection was the arrival of the deputy sheriff.

Section 245 of the Penal Code makes it a crime to commit an assault upon the person of another with a deadly weapon or instrument.

An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (Pen. Code, § 240.) ▮ To constitute an assault there must be a specific intent to commit a battery, and an act which is close to accomplishment and not mere preparation. (1 Witkin, Cal. Crimes, Assault, § 256, p. 242.)

Appellant has filed a brief in propria persona and makes a number of contentions, the first of which is that the evidence is not sufficient to support the conviction of assault with a deadly weapon because, so he contends, there is no evidence that appellant had any intention of causing anybody great bodily injury.

▮ The applicable law is set forth in *People* v. *Roshid*, 191 Cal.App.2d 692, at pages 693-694[12 Cal.Rptr. 794]:

"All that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another. (Pen. Code, § 245; *People* v. *Marcus*, 133 Cal.App.2d 579, 581 [284 P.2d 848].) An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (Pen. Code, § 240.) ■ A gun capable of being fired is a deadly weapon. (*People* v. *Pittullo*, 116 Cal.App.2d 373, 376 [253 P.2d 705].) The intent may be inferred from the doing of the wrongful act. (*People* v. *Walker*, 99 Cal.App.2d 238, 242 [221 P.2d 287].)" (See also *People* v. *McCoy*, 25 Cal.2d 177, 189 [153 P.2d 315].)

■ We think it is clear there was ample evidence that there was an unlawful attempt, coupled with the present ability, to commit a violent injury on the person of Mr. Senna. The record indicates that the appellant came out of his house carrying a shotgun. Standing on the porch in full view of Mr. Senna, Mr. and Mrs. Palmer and Mrs. Corson, the appellant loaded the gun, yelled that he was going to kill the "Portugee," and then started walking toward Mr. Senna in a "stalking" manner and only halted when Mr. Senna finally fired a warning shot into the air. There clearly was an assault. ■ The loaded shotgun in question is well within the meaning of "deadly weapon or instrument" of section 245 of the Penal Code.

■ Appellant further contends that due to his intoxicated condition he could not have had any intent to injure Mr. Senna. The law is clear that the intent necessary in this type of case may be inferred from the doing of the wrongful act. (*People* v. *Walker*, 99 Cal.App.2d 238, 242 [221 P.2d 287]; *People* v. *Roshid, supra,* at p. 694.)

The fact that the appellant may have been intoxicated either by the liquor he consumed or by a mixture of the liquor and the "pills" he claims he took is no defense. "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition." (Pen. Code, § 22.) Voluntary intoxication, whether induced by liquor or drugs, is not a defense. (*People* v. *Lim Dum Dong*, 26 Cal.App.2d 135, 138 [78 P.2d 1026]; *People* v. *Haskins*, 177 Cal.App.2d 84, 88 [2 Cal.Rptr. 34]; *People* v. *Alexander*, 182 Cal.App.2d 281, 291 [6 Cal.Rptr. 153]; *People* v. *Butler*, 205 Cal.App.2d 437, 439 [23 Cal. Rptr. 118].)

■ Appellant contends also that his conviction was the result of the "suppression of evidence and of a key witness, in the defendant's behalf, thereby denying the defendant a fair and impartial trial."

Appellant contends generally that he was not properly represented because his attorney purportedly suppressed evidence and failed to call a key witness.

■ Before it can be held that an accused's representation by counsel was inadequate to the degree that it violated his right to representation (Cal. Const., art. I, § 13) and due process (U.S. Const., 14th Amend., § 1), an extreme case must be disclosed. The representation must be of such a low order as to render the trial a farce and a mockery of justice, or it must be shown that the essential integrity of the proceeding as a trial was destroyed by the incompetency of counsel. (*People* v. *Wein,* 50 Cal.2d 386, 410 [326 P.2d 457].)

■ The record in this case does not support appellant's claim of inadequacy of representation. It shows affirmatively that defense counsel cross-examined prosecution witnesses thoroughly, and shows further that defense counsel made a vigorous and able argument to the jury. ■ Appellant complains that his attorney did not call as a witness Dr. Bonar whom appellant claimed had prescribed the pills taken by him during the day.

However, the failure of defense counsel to call a witness would not be grounds for reversal. " 'If defendant felt his counsel did not adequately represent him he should have complained to the trial court and given that court an opportunity to correct the situation. In the absence of such complaint the acts of defendant's counsel are imputed to him. [Citations.]' " (*People* v. *Seals,* 191 Cal.App.2d 734, 739 [13 Cal.Rptr. 7]; see also *People* v. *Wilson,* 139 Cal.App.2d 762 [294 P.2d 81]; *People* v. *Wren,* 140 Cal.App.2d 368 [295 P.2d 54].)

■ A defense attorney must exercise his best judgment in the conduct of his client's case. The record in the case at bench convinces us that defense counsel acted in what he believed was the best interest of appellant and that the failure to call Dr. Bonar cannot be held to amount to a lack of a fair trial or inadequate representation.

In view of the in propria persona character of the appeal, we have independently examined the record to ascertain if defendant had a fair trial.

Defendant's intoxication was described by witnesses other

than defendant himself. He was wobbling as he came toward Senna. He came no closer than 175 feet. No instruction on simple assault was requested, and the jury was instructed only on the subject of assault with a deadly weapon and given no opportunity to consider whether defendant was guilty only of simple assault. We make these observations not because we have power to review the jury's finding of a deadly weapon (*People* v. *McCoy, supra,* 25 Cal.2d 177, 188) but because of the state prison sentence imposed by the court in preference to the county jail term permitted by section 245 of the Penal Code. Defendant did have a prior felony conviction, but that occurred 40 years before the offense here involved. We have not had the opportunity of seeing or hearing the witnesses or of reading the probation report. On the basis of the record before us, we can only affirm the judgment.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied November 26, 1963.